McCARTHY *v.* MADIGAN ET AL.

No. 90–6861. Argued December 9, 1991—Decided March 4, 1992

BLACKMUN, J., delivered the opinion of the Court, in which WHITE, STEVENS, O'CONNOR, KENNEDY, and SOUTER, JJ., joined. REHNQUIST, C. J., filed an opinion concurring in the judgment, in which SCALIA and THOMAS, JJ., joined, *post*, p. 156.

*Paul M. Smith* argued the cause and filed briefs for petitioner.

*Deputy Solicitor General Mahoney* argued the cause for respondents. With her on the brief were *Solicitor General Starr, Assistant Attorney General Mueller, Amy L. Wax, Victor D. Stone,* and *William D. Braun.*

JUSTICE BLACKMUN delivered the opinion of the Court.

The issue in this case is whether a federal prisoner must resort to the internal grievance procedure promulgated by the Federal Bureau of Prisons before he may initiate a suit, pursuant to the authority of *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388 (1971), solely for money damages. The Court of Appeals for the Tenth Circuit ruled that exhaustion of the grievance procedure was required. 914 F. 2d 1411 (1990). We granted certiorari to resolve a conflict among the Courts of Appeals.[1] 499 U. S. 974 (1991).

---

[1] Compare *Hessbrook* v. *Lennon,* 777 F. 2d 999 (CA5 1985) (exhaustion required), and *Brice* v. *Day,* 604 F. 2d 664 (CA10 1979) (same), cert. denied, 444 U. S. 1086 (1980), with *Muhammad* v. *Carlson,* 739 F. 2d 122 (CA3

## I

While he was a prisoner in the federal penitentiary at Leavenworth, petitioner John J. McCarthy filed a *pro se* complaint in the United States District Court for the District of Kansas against four prison employees: the hospital administrator, the chief psychologist, another psychologist, and a physician. McCarthy alleged that respondents had violated his constitutional rights under the Eighth Amendment by their deliberate indifference to his needs and medical condition resulting from a back operation and a history of psychiatric problems. On the first page of his complaint, he wrote: "This Complaint seeks Money Damages Only." App. 7.

The District Court dismissed the complaint on the ground that petitioner had failed to exhaust prison administrative remedies. *Id.*, at 12. Under 28 CFR pt. 542 (1991), setting forth the general "Administrative Remedy Procedure for Inmates" at federal correctional institutions, a prisoner may "seek formal review of a complaint which relates to any aspect of his imprisonment." § 542.10.[2] When an inmate files a complaint or appeal, the responsible officials are directed to acknowledge the filing with a "signed receipt" which is returned to the inmate, to "[c]onduct an investigation," and to "[r]espond to and sign all complaints or appeals." §§ 542.11(a)(2) to (4). The general grievance regulations do not provide for any kind of hearing or for the granting of any particular type of relief.

---

1984) (exhaustion not required), and *Goar* v. *Civiletti*, 688 F. 2d 27 (CA6 1982) (same).

[2] Certain categories of filings, however, "will not be accepted" under the general procedure. These include, among others, "tort claims." See 28 CFR § 542.12 (1991). The Bureau of Prisons has interpreted this "tort claims" exception to include claims under the Federal Tort Claims Act, but not constitutional claims for relief recognized under the *Bivens* case. Brief for Respondents 3, n. 1. Claims under the Federal Tort Claims Act are governed by a separate administrative procedure. See §§ 543.30 to 543.32.

To promote efficient dispute resolution, the procedure includes rapid filing and response timetables. An inmate first seeks informal resolution of his claim by consulting prison personnel. § 542.13(a). If this informal effort fails, the prisoner "may file a formal written complaint on the appropriate form, within fifteen (15) calendar days of the date on which the basis of the complaint occurred." § 542.13(b). Should the warden fail to respond to the inmate's satisfaction within 15 days, the inmate has 20 days to appeal to the Bureau's Regional Director, who has 30 days to respond. If the inmate still remains unsatisfied, he has 30 days to make a final appeal to the Bureau's general counsel, who has another 30 days to respond. §§ 542.14 and 542.15. If the inmate can demonstrate a "valid reason for delay," he "shall be allowed" an extension of any of these time periods for filing. § 542.13(b).

Petitioner McCarthy filed with the District Court a motion for reconsideration under Federal Rule of Civil Procedure 60(b), arguing that he was not required to exhaust his administrative remedies, because he sought only money damages which, he claimed, the Bureau could not provide.[3] 1 Record, Exh. 7. The court denied the motion. App. 14.

The Court of Appeals, in affirming, observed that because *Bivens* actions are a creation of the judiciary, the courts may impose reasonable conditions upon their filing. 914 F. 2d, at 1412. The exhaustion rule, the court reasoned, "is not keyed to the type of relief sought, but to the need for prelim-

---

[3] McCarthy actually had initiated a grievance prior to filing his complaint in the District Court. Brief for Petitioner 5, n. 7. But he did not exhaust the procedures at that time and, in any event, he concedes that that grievance related to his request for a private cell and not to the medical issues at the heart of his federal complaint. After his initial grievance was dismissed, he filed a grievance with respect to the medical issues. It was accepted, even though it was late, but was denied by the warden on the merits. Tr. of Oral Arg. 38. McCarthy's subsequent appeal to the Bureau's regional office was rejected because it was filed late. *Id.*, at 16; Brief for Petitioner 5, n. 7.

inary fact-finding" to determine "whether there is a possible *Bivens* cause of action." *Ibid.* Accordingly, " '[a]lthough the administrative apparatus could not award money damages . . . , administrative consideration of the possibility of corrective action and a record would have aided a court in measuring liability and determining the *extent* of the damages.' " *Ibid.*, quoting *Goar* v. *Civiletti*, 688 F. 2d 27, 29 (CA6 1982) (emphasis in original). Exhaustion of the general grievance procedure was required notwithstanding the fact that McCarthy's request was solely for money damages.

## II

The doctrine of exhaustion of administrative remedies is one among related doctrines—including abstention, finality, and ripeness—that govern the timing of federal-court decisionmaking. Of "paramount importance" to any exhaustion inquiry is congressional intent. *Patsy* v. *Board of Regents of Florida*, 457 U. S. 496, 501 (1982). Where Congress specifically mandates, exhaustion is required. *Coit Independence Joint Venture* v. *FSLIC*, 489 U. S. 561, 579 (1989); *Patsy*, 457 U. S., at 502, n. 4. But where Congress has not clearly required exhaustion, sound judicial discretion governs. *McGee* v. *United States*, 402 U. S. 479, 483, n. 6 (1971). See also *Patsy*, 457 U. S., at 518 (WHITE, J., concurring in part) ("[E]xhaustion is 'a rule of judicial administration,' . . . and unless Congress directs otherwise, rightfully subject to crafting by judges"). Nevertheless, even in this field of judicial discretion, appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard in a federal court requires fashioning of exhaustion principles in a manner consistent with congressional intent and any applicable statutory scheme. *Id.*, at 501–502, and n. 4.

## A

This Court long has acknowledged the general rule that parties exhaust prescribed administrative remedies before

seeking relief from the federal courts. See, *e. g., Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41, 50–51, and n. 9 (1938) (discussing cases as far back as 1898). Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.

As to the first of these purposes, the exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer. Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise. *McKart* v. *United States*, 395 U. S. 185, 194 (1969). See also *Bowen* v. *City of New York*, 476 U. S. 467, 484 (1986). The exhaustion doctrine also acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court. Correlatively, exhaustion principles apply with special force when "frequent and deliberate flouting of administrative processes" could weaken an agency's effectiveness by encouraging disregard of its procedures. *McKart* v. *United States*, 395 U. S., at 195.

As to the second of the purposes, exhaustion promotes judicial efficiency in at least two ways. When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided. See, *e. g., Parisi* v. *Davidson*, 405 U. S. 34, 37 (1972); *McKart* v. *United States,* 395 U. S., at 195. And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context. See, *e. g., Weinberger*

v. *Salfi*, 422 U. S. 749, 765 (1975) (exhaustion may allow agency "to compile a record which is adequate for judicial review").

## B

Notwithstanding these substantial institutional interests, federal courts are vested with a "virtually unflagging obligation" to exercise the jurisdiction given them. *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800, 817–818 (1976). "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens* v. *Virginia*, 6 Wheat. 264, 404 (1821). Accordingly, this Court has declined to require exhaustion in some circumstances even where administrative and judicial interests would counsel otherwise. In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. "[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *West* v. *Bergland*, 611 F. 2d 710, 715 (CA8 1979), cert. denied, 449 U. S. 821 (1980). Application of this balancing principle is "intensely practical," *Bowen* v. *City of New York*, 476 U. S., at 484, citing *Mathews* v. *Eldridge*, 424 U. S. 319, 331, n. 11 (1976), because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided.

## C

This Court's precedents have recognized at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion. First, requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion

of a court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action. See *Gibson* v. *Berryhill*, 411 U. S. 564, 575, n. 14 (1973) (administrative remedy deemed inadequate "[m]ost often . . . because of delay by the agency"). See also *Coit Independence Joint Venture* v. *FSLIC*, 489 U. S., at 587 ("Because the Bank Board's regulations do not place a reasonable time limit on FSLIC's consideration of claims, Coit cannot be required to exhaust those procedures"); *Walker* v. *Southern R. Co.*, 385 U. S. 196, 198 (1966) (possible delay of 10 years in administrative proceedings makes exhaustion unnecessary); *Smith* v. *Illinois Bell Telephone Co.*, 270 U. S. 587, 591–592 (1926) (claimant "is not required indefinitely to await a decision of the rate-making tribunal before applying to a federal court for equitable relief"). Even where the administrative decisionmaking schedule is otherwise reasonable and definite, a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim. *Bowen* v. *City of New York*, 476 U. S., at 483 (disability-benefit claimants "would be irreparably injured were the exhaustion requirement now enforced against them"); *Aircraft & Diesel Equipment Corp.* v. *Hirsch*, 331 U. S. 752, 773 (1947) ("impending irreparable injury flowing from delay incident to following the prescribed procedure" may contribute to finding that exhaustion is not required). By the same token, exhaustion principles apply with less force when an individual's failure to exhaust may preclude a defense to criminal liability. *Moore* v. *East Cleveland*, 431 U. S. 494, 497, n. 5 (1977) (plurality opinion); *McKart* v. *United States*, 395 U. S., at 197.

Second, an administrative remedy may be inadequate "because of some doubt as to whether the agency was empowered to grant effective relief." *Gibson* v. *Berryhill*, 411 U. S., at 575, n. 14. For example, an agency, as a preliminary matter, may be unable to consider whether to grant relief because it lacks institutional competence to resolve the par-

ticular type of issue presented, such as the constitutionality of a statute. See, *e. g., Moore* v. *East Cleveland*, 431 U. S., at 497, n. 5; *Mathews* v. *Diaz*, 426 U. S. 67, 76 (1976). In a similar vein, exhaustion has not been required where the challenge is to the adequacy of the agency procedure itself, such that " 'the question of the adequacy of the administrative remedy . . . [is] for all practical purposes identical with the merits of [the plaintiff's] lawsuit.' " *Barry* v. *Barchi*, 443 U. S. 55, 63, n. 10 (1979) (quoting *Gibson* v. *Berryhill*, 411 U. S., at 575). Alternatively, an agency may be competent to adjudicate the issue presented, but still lack authority to grant the type of relief requested. *McNeese* v. *Board of Ed. for Community Unit School Dist. 187*, 373 U. S. 668, 675 (1963) (students seeking to integrate public school need not file complaint with school superintendent because the "Superintendent himself apparently has no power to order corrective action" except to request the Attorney General to bring suit); *Montana National Bank of Billings* v. *Yellowstone County*, 276 U. S. 499, 505 (1928) (taxpayer seeking refund not required to exhaust where "any such application [would have been] utterly futile since the county board of equalization was powerless to grant any appropriate relief" in face of prior controlling court decision).

Third, an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it. *Gibson* v. *Berryhill*, 411 U. S., at 575, n. 14; *Houghton* v. *Shafer*, 392 U. S. 639, 640 (1968) (in view of Attorney General's submission that the challenged rules of the prison were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act"); *Association of National Advertisers, Inc.* v. *FTC*, 201 U. S. App. D. C. 165, 170–171, 627 F. 2d 1151, 1156–1157 (1979) (bias of Federal Trade Commission chairman), cert. denied, 447 U. S. 921 (1980). See also *Patsy* v. *Florida International University*,

634 F. 2d 900, 912–913 (CA5 1981) (en banc) (administrative procedures must "not be used to harass or otherwise discourage those with legitimate claims"), rev'd on other grounds *sub nom. Patsy* v. *Board of Regents of Florida,* 457 U. S. 496 (1982).

### III

In light of these general principles, we conclude that petitioner McCarthy need not have exhausted his constitutional claim for money damages. As a preliminary matter, we find that Congress has not meaningfully addressed the appropriateness of requiring exhaustion in this context. Although respondents' interests are significant, we are left with a firm conviction that, given the type of claim McCarthy raises and the particular characteristics of the Bureau's general grievance procedure, McCarthy's individual interests outweigh countervailing institutional interests favoring exhaustion.

### A

Turning first to congressional intent, we note that the general grievance procedure was neither enacted nor mandated by Congress. Respondents, however, urge that Congress, in effect, has acted to require exhaustion by delegating power to the Attorney General and the Bureau of Prisons to control and manage the federal prison system. See 18 U. S. C. §§ 4001(b) and 4042. Brief for Respondents 3, 16; Tr. of Oral Arg. 41–42. We think respondents confuse what Congress could be claimed to allow by implication with what Congress affirmatively has requested or required. By delegating authority, in the most general of terms, to the Bureau to administer the federal prison system, Congress cannot be said to have spoken to the particular issue whether prisoners in the custody of the Bureau should have direct access to the federal courts.

Respondents next argue that Congress, by enactment of § 7 of the Civil Rights of Institutionalized Persons Act, 94 Stat. 352, 42 U. S. C. § 1997e, has articulated a policy favoring

exhaustion of the prison grievance procedure prior to the filing of a constitutional claim against prison officials. Section 1997e imposes a limited exhaustion requirement for a claim brought by a state prisoner under Rev. Stat. § 1979, 42 U. S. C. § 1983, provided that the underlying state prison administrative remedy meets specified standards. See *Patsy* v. *Board of Regents of Florida*, 457 U. S., at 507–512. Section 1997e has no direct application in this case, because at issue here is a *Bivens* claim by a *federal* prisoner against federal prison officials. We find it significant that Congress, in enacting § 1997e, stopped short of imposing a parallel requirement in the federal prison context.

Section 1997e is not only inapplicable to *Bivens* claims, but—by its own terms—cuts against respondents' claim that the particular procedure now at issue need be exhausted. First, unlike the rule of exhaustion proposed here, § 1997e does not authorize dismissal of an action for failure to exhaust. Instead, it provides that the action is to be stayed for a maximum of 90 days. See § 1997e(a)(1). Second, § 1997e does not mechanically require exhaustion in every case where an acceptable state procedure is in place. Rather, it directs federal courts to abstain "if the court believes that such a [waiting] requirement would be appropriate and in the interests of justice." § 1997e(a)(1). In other words, if an inmate fails to meet filing deadlines under an administrative scheme, a court has ample discretion to determine that exhaustion nonetheless should be forgone. Third, in contrast to the absence of any provision for the award of money damages under the Bureau's general grievance procedure, the statute conditions exhaustion on the existence of "effective administrative remedies."[4] It is diffi-

---

[4] The Conference Committee Report states: "It is the intent of the Congress that the court not find such a requirement [of exhaustion] appropriate in those situations in which the action brought . . . raises issues

cult to see why a stricter rule of exhaustion than Congress itself has required in the state prison context should apply in the federal prison context.

Respondents also argue that requiring exhaustion is appropriate because *Bivens* relief gives way when necessary to accommodate either the effective functioning of Government or an articulated congressional policy. Brief for Respondents 15. We have recognized that a *Bivens* remedy does not lie in two situations: (1) where Congress has provided an equally effective alternative remedy and declared it to be a substitute for recovery under the Constitution, and (2) where, in the absence of affirmative action by Congress, special factors counsel hesitation. *Carlson* v. *Green*, 446 U. S. 14, 18–19 (1980). As to the first exception, Congress did not create the remedial scheme at issue here and that scheme, in any case, as noted above, cannot be considered to be equally effective with respect to a claim for money damages. As to the second exception, respondents appear to confuse the presence of *special* factors with *any* factors counseling hesitation. In *Carlson*, the Court held that "special factors" do not free prison officials from *Bivens* liability, because prison officials do not enjoy an independent status in our constitutional scheme, nor are they likely to be unduly inhibited in the performance of their duties by the assertion of a *Bivens* claim. *Carlson* v. *Green*, 446 U. S., at 19.

Interpreting the "special factors" exception in *Schweiker* v. *Chilicky*, 487 U. S. 412 (1988), and in *Bush* v. *Lucas*, 462

---

which cannot, in reasonable probability, be resolved by the grievance resolution system . . . ." H. R. Conf. Rep. No. 96–897, p. 15 (1980).

The Attorney General, charged under the statute with certifying the adequacy of state administrative remedial schemes, has provided by regulation: "The [state] grievance procedure shall afford a successful grievant *a meaningful remedy.*" 28 CFR §40.6 (1991) (emphasis added). At the time of promulgating these regulations, the Department of Justice observed on the public record: "Presumably, where monetary relief was the sole adequate remedy and could not be obtained through a grievance procedure, exhaustion would not be appropriate." 46 Fed. Reg. 3845 (1981).

U. S. 367 (1983), the Court found the *Bivens* remedy displaced because Congress had legislated an elaborate and comprehensive remedial scheme. *Schweiker*, 487 U. S., at 425; *Bush*, 462 U. S., at 388. "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Schweiker*, 487 U. S., at 423. Here Congress has enacted nothing.

## B

Because Congress has not *required* exhaustion of a federal prisoner's *Bivens* claim, we turn to an evaluation of the individual and institutional interests at stake in this case. The general grievance procedure heavily burdens the individual interests of the petitioning inmate in two ways. First, the procedure imposes short, successive filing deadlines that create a high risk of forfeiture of a claim for failure to comply. Second, the administrative "remedy" does not authorize an award of monetary damages—the only relief requested by McCarthy in this action. The combination of these features means that the prisoner seeking only money damages has everything to lose and nothing to gain from being required to exhaust his claim under the internal grievance procedure.

The filing deadlines for the grievance procedure require an inmate, within 15 days of the precipitating incident, not only to attempt to resolve his grievance informally but also to file a formal written complaint with the prison warden. 28 CFR § 542.13 (1991). Then, he must successively hurdle 20-day and 30-day deadlines to advance to the end of the grievance process. § 542.15. Other than the Bureau's general and quite proper interest in having early notice of any claim, we have not been apprised of any urgency or exigency justifying this timetable. Cf. *Yakus* v. *United States*, 321 U. S. 414, 435 (1944) ("The sixty days' period allowed for protest of the Administrator's regulations cannot be said to be

unreasonably short in view of the urgency and exigencies of wartime price regulation"). As a practical matter, the filing deadlines, of course, may pose little difficulty for the knowledgeable inmate accustomed to grievances and court actions. But they are a likely trap for the inexperienced and unwary inmate, ordinarily indigent and unrepresented by counsel, with a substantial claim.

Respondents argue that the deadlines are not jurisdictional and may be extended for any "valid" reason. See 28 CFR §§ 542.13(b) and 542.15 (1991). Yet the regulations do not elaborate upon what a "valid" reason is. Moreover, it appears that prison officials—perhaps the very officials subject to suit—are charged with determining what is a "valid" reason.

All in all, these deadlines require a good deal of an inmate at the peril of forfeiting his claim for money damages. The "first" of "the principles that necessarily frame our analysis of prisoners' constitutional claims" is that "federal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner* v. *Safley,* 482 U. S. 78, 84 (1987). Because a prisoner ordinarily is divested of the privilege to vote, the right to file a court action might be said to be his remaining most "fundamental political right, because preservative of all rights." *Yick Wo* v. *Hopkins,* 118 U. S. 356, 370 (1886). The rapid filing deadlines counsel strongly against exhaustion as a prerequisite to the filing of a federal-court action.[5]

---

[5] Petitioner concedes that if his complaint contained a prayer for injunctive relief, exhaustion principles would apply differently. Brief for Petitioner 20, n. 20. Were injunctive relief sought, the grievance procedure probably would be capable of producing the type of corrective action desired. Additionally, because of the continuing nature of conduct subject to injunctive relief, the short filing deadlines would pose less difficulty because the limitations period would be triggered anew by ongoing conduct.

As we have noted, the grievance procedure does not include any mention of the award of monetary relief. Respondents argue that this should not matter, because "in most cases there are other things that the inmate wants." Tr. of Oral Arg. 30. This may be true in some instances. But we cannot presume, as a general matter, that when a litigant has deliberately forgone any claim for injunctive relief and has singled out discrete past wrongs, specifically requesting monetary compensation only, that he is likely interested in "other things." The Bureau, in any case, is always free to offer an inmate administrative relief in return for withdrawal of his lawsuit. We conclude that the absence of any monetary remedy in the grievance procedure also weighs heavily against imposing an exhaustion requirement.

In the alternative, respondents argue that, despite the absence of any provision in the general grievance procedure for the award of money damages, such damages in fact are available for most prisoners asserting *Bivens* claims. As to *Bivens* claims that could have been brought under the Federal Tort Claims Act (FTCA),[6] respondents contend that a grievance asking for money damages can be "converted" by prison officials to a FTCA claim for which prison officials are au-

---

[6] Respondents contend that *Bivens* claims are almost always categorizable as FTCA claims, especially in view of the Attorney General's concession that corrections guards are "law enforcement" officers within the meaning of the exception to the intentional-tort exception of the FTCA. Tr. of Oral Arg. 41. As to those claims that are not categorizable as FTCA claims, respondents concede that the Bureau of Prisons has no authority to offer a monetary settlement. *Id.*, at 40. Instead, they contend that the Department of Justice has a general settlement authority under the federal regulations that might be exercised to dispose of general grievance claims. 28 CFR § 50.15(c)(2) (1991). Nothing in the record indicates that this authority has ever been exercised to recompense a prisoner with a *Bivens* claim. Moreover, it is highly unlikely that a monetary settlement would be made in the course of an administrative proceeding, because the regulation provides that "[a]bsent exceptional circumstances" a monetary settlement will not be paid "before entry of an adverse verdict, judgment, or award." § 50.15(c)(3).

thorized, under 28 CFR § 543.30 (1991), to award money damages. This "conversion" authority does not appear in the regulations having to do with the grievance procedure, which raises substantial doubt that an inmate would have sufficient notice as to how his claim would be treated. In any event, respondents have not pointed to anything in the record showing that prison officials have a practice of converting a claim filed under the general grievance procedure to a claim under the FTCA procedure. We agree with petitioner that it is implausible to think that they do. The availability of a money damages remedy is, at best, uncertain, and the uncertainty of the administrative agency's authority to award relief counsels against requiring exhaustion. See *Hillsborough* v. *Cromwell*, 326 U. S. 620, 626 (1946); *Union Pacific R. Co.* v. *Board of Comm'rs of Weld County*, 247 U. S. 282, 287 (1918).

We do not find the interests of the Bureau of Prisons to weigh heavily in favor of exhaustion in view of the remedial scheme and particular claim presented here. To be sure, the Bureau has a substantial interest in encouraging internal resolution of grievances and in preventing the undermining of its authority by unnecessary resort by prisoners to the federal courts. But other institutional concerns relevant to exhaustion analysis appear to weigh in hardly at all. The Bureau's alleged failure to render medical care implicates only tangentially its authority to carry out the control and management of the federal prisons. Furthermore, the Bureau does not bring to bear any special expertise on the type of issue presented for resolution here.

The interests of judicial economy do not stand to be advanced substantially by the general grievance procedure. No formal factfindings are made. The paperwork generated by the grievance process might assist a court somewhat in ascertaining the facts underlying a prisoner's claim more quickly than if it has only a prisoner's complaint to review. But the grievance procedure does not create a formal factual

record of the type that can be relied on conclusively by a court for disposition of a prisoner's claim on the pleadings or at summary judgment without the aid of affidavits.

## C

In conclusion, we are struck by the absence of supporting material in the regulations, the record, or the briefs that the general grievance procedure here was crafted with any thought toward the principles of exhaustion of claims for money damages. The Attorney General's professed concern for internal dispute resolution has not translated itself into a more effective grievance procedure that might encourage the filing of an administrative complaint as opposed to a court action. Congress, of course, is free to design or require an appropriate administrative procedure for a prisoner to exhaust his claim for money damages. Even without further action by Congress, we do not foreclose the possibility that the Bureau itself may adopt an appropriate administrative procedure consistent with congressional intent.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

CHIEF JUSTICE REHNQUIST, with whom JUSTICE SCALIA and JUSTICE THOMAS join, concurring in the judgment.

I agree with the Court's holding that a federal prisoner need not exhaust the procedures promulgated by the Federal Bureau of Prisons. My view, however, is based entirely on the fact that the grievance procedure at issue does not provide for any award of monetary damages. As a result, in cases such as this one where prisoners seek monetary relief, the Bureau's administrative remedy furnishes no effective remedy at all, and it is therefore improper to impose an exhaustion requirement. See *McNeese* v. *Board of Ed. for Community Unit School Dist. 187*, 373 U. S. 668, 675 (1963); *Montana National Bank of Billings* v. *Yellowstone County*, 276 U. S. 499, 505 (1928).

Because I would base the decision on this ground, I do not join the Court's extensive discussion of the general principles of exhaustion, nor do I agree with the implication that those general principles apply without modification in the context of a *Bivens* claim. In particular, I disagree with the Court's reliance on the grievance procedure's filing deadlines as a basis for excusing exhaustion. As the majority observes, *ante,* at 146–147, we have previously refused to require exhaustion of administrative remedies where the administrative process subjects plaintiffs to unreasonable delay or to an indefinite timeframe for decision. See *Coit Independence Joint Venture* v. *FSLIC,* 489 U. S. 561, 587 (1989); *Gibson* v. *Berryhill,* 411 U. S. 564, 575, n. 14 (1973); *Walker* v. *Southern R. Co.,* 385 U. S. 196, 198 (1966); *Smith* v. *Illinois Bell Telephone Co.,* 270 U. S. 587, 591–592 (1926). This principle rests on our belief that when a plaintiff might have to wait seemingly forever for an agency decision, agency procedures are "inadequate" and therefore need not be exhausted. *Coit Independence Joint Venture* v. *FSLIC, supra,* at 587.

But the Court makes strange use of this principle in holding that filing deadlines imposed by agency procedures may provide a basis for finding that those procedures need not be exhausted. *Ante,* at 152–153. Whereas before we have held that procedures without "reasonable time limit[s]" may be inadequate because they make a plaintiff wait too long, *Coit Independence Joint Venture* v. *FSLIC, supra,* at 587, today the majority concludes that strict filing deadlines might also contribute to a finding of inadequacy because they make a plaintiff move too quickly. But surely the second proposition does not follow from the first. In fact, short filing deadlines will almost always promote quick decision-making by an agency, the very result that we have advocated repeatedly in the cases cited above. So long as there is an escape clause, as there is here, and the time limit is within a

158

zone of reasonableness, as I believe it is here, the length of the period should not be a factor in deciding the adequacy of the remedy.