[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS
FACTUAL BACKGROUND
On January 11, 1995, the plaintiff, Edward Holub, filed a two-count complaint against ten defendants, (two individuals and eight corporations) alleging the following facts. Until January 22, 1993, the plaintiff was employed for thirteen years by each of the eight defendant companies. These corporations were owned and operated by the defendant H. Nash Babcock. The companies manufacture, test and sell grout and concrete mix materials to nuclear power plants to be used in CT Page 878 critical areas of the facilities. The plaintiff had been involved in the development of new cement and concrete products and had secured many patents on the companies' behalf.
On June 22, 1992, the plaintiff reported to the United States Nuclear Regulatory Commission (NRC) that he had doubts and concerns about his employers' quality assurance and testing programs, and the adequacy of the products being sold by the companies to the nuclear power plants. Thereafter, the plaintiff cooperated with the NRC in its investigation of the companies.
By October 1992, the defendants suspected that the plaintiff had been cooperating with the NRC. On December 22, 1992, the defendant, William Babcock, met with the plaintiff purportedly to review his annual performance. William Babcock asked the plaintiff if he had known in advance about an August 18, 1992, inspection by the NRC. When the plaintiff informed him that he had known about the inspection in advance, William Babcock "seemed concerned" and quickly concluded the meeting. Shortly after the meeting, the plaintiff heard William Babcock shouting from his office: "I want him out of the building."
The plaintiff was placed on involuntary leave from December 22, 1992 until January 11, 1993. When the plaintiff returned to work he was required to update material data safety sheets, but he no longer had access to a secretary or any other employees to assist him with the assignment. There was no written job description requiring the plaintiff to update the forms. When the plaintiff left work on January 18, 1993, to report this "harassment" to the NRC, he was placed on involuntary leave until January 25, 1993. On January 22, 1993, the plaintiff received a letter informing him that he was fired as of that date.
The first count alleges common law wrongful termination and the second count alleges a violation of General Statutes §31-51q, which prohibits employers from retaliating against employees who exercise certain constitutional rights. The plaintiff asks for money damages, compensatory damages, punitive damages, attorneys fees and costs and any other suitable relief.
On October 10, 1995, the defendants filed a motion to CT Page 879 dismiss the plaintiffs' entire complaint together with a memorandum of law and supporting documentation. The plaintiffs filed a memorandum in opposition to the motion to dismiss on October 25, 1995. The defendants filed a reply memorandum on November 16, 1995; the plaintiff filed a reply to that memorandum on November 20, 1995.
LEGAL DISCUSSION
"A motion to dismiss is the appropriate vehicle for challenging the jurisdiction of the court. Practice Book § 142." Zizka v. Water Pollution Control Authority, 195 Conn. 682,687, 490 A.2d 509 (1985). "A motion to dismiss . . . essentially assert[s] that the plaintiff cannot as a matter of law and fact state a cause of action that should by heard be the court." (Internal quotation marks omitted.) Gurliacci v.Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) Antinerella v. Rioux, 229 Conn. 479, 489,642 A.2d 699 (1994). Finally, "[o]nce the question of lack of jurisdiction of a court is raised, it must be disposed of no matter in what form it is presented and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Golden Hill Paugussett Tribe ofIndians v. Southbury, 231 Conn. 563, 570-71, 651 A.2d 1246
(1995).
The defendants argue that the plaintiff's complaint should be dismissed for lack of subject matter jurisdiction because the plaintiff failed to exhaust the administrative proceeding that he initiated. In support of this argument, the defendants submitted a copy of the federal administrative complaint filed by the plaintiff pursuant to 42 U.S.C. § 5851
in January, 1993.[1]
The plaintiff contends that he is not required to exhaust this particular administrative remedy because in 1992 Congress amended § 5851 to create a new subsection (h) which provides that § 5851 "may not be construed to expand, diminish or otherwise affect any right otherwise available to an employee under Federal or State law to redress the employee's discharge or other discriminatory action taken by the employer against the employee." 42 U.S.C. § 5851(h). The plaintiff contends CT Page 880 that this provision eliminates the requirement of exhausting the administrative remedy provided by § 5851. Furthermore, the plaintiff argues that if the doctrine of exhaustion is followed, he will not be able to assert his claims in Connecticut state court because the statutes of limitation run on January 22, 1996.
"Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature, and must be dismissed." Reiter v. Cooper, 507 U.S. ___,113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993).
"Congressional intent is important in determining the application of the exhaustion doctrine to cases in which federal administrative remedies are available, as well as to those in which state remedies are available. Of course, exhaustion is required where Congress provides that certain administrative remedies shall be exclusive. . . . Even where the statutory requirement of exhaustion is not explicit, courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme." (Citations omitted.) Patsy v. FloridaBoard of Regents, 457 U.S. 496, 502, n. 4, 102 S.Ct. 2557,73 L.Ed.2d 172 (1982). "[W]here Congress has not clearly required exhaustion, sound judicial discretion governs."McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081,117 L.Ed.2d 291 (1992).
In exercising this judicial discretion, the Supreme Court applies a balancing test. "Administrative remedies need not be pursued if the litigants interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further. . . . Application of the balancing principle is intensely practical . . . because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided. . . . This Court's precedents have recognized [a] broad set of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." (Citations omitted; internal quotation marks omitted.) Id., 146. CT Page 881
One set of circumstances when exhaustion is not followed exists where "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action. Such prejudice may result, for example, from an unreasonable or indefinite time frame for administrative action. . . . Even where the administrative decision making schedule is otherwise reasonable and definite, a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." (Citations omitted.) Id., 146-47.
In the present case the plaintiff brought his administrative claim pursuant to 42 U.S.C. § 5851. There is no provision from Congress indicating that this administrative remedy is exclusive, therefore exhaustion is not required. Since exhaustion is not required, the decision of whether to apply the doctrine is left to the discretion of the court. The United States Supreme Court has provided that this decision be guided by Congressional intent and the balancing of the plaintiff's rights with the government's interests.
First, with the creation of subsection (h) in 1992, Congress indicated that the administrative remedy contained in § 5851 should not be construed to diminish or otherwise affect any right otherwise available under state law. If the court requires exhaustion of the administrative remedy before it will assume jurisdiction over Connecticut state law claims, then the court will be diminishing or otherwise affecting the right available under state law. Accordingly, following the doctrine of exhaustion would be inconsistent with Congressional intent and the statutory scheme.
Moreover, pursuant to General Statute § 52-577, the statute of limitations for wrongful termination and violation of General Statutes § 31-51q is three years. Thus, the plaintiff's rights available under state law will no longer be available after January 1996 and there is no indication that the administrative remedy will be exhausted by this date. Therefore, if the court follows the doctrine of exhaustion, the plaintiff will suffer irreparable harm. Based on the Supreme Court's interpretation of similar circumstances, the plaintiff's right to immediate judicial consideration of his claim outweighs the government's interest in following the doctrine of exhaustion. CT Page 882
Accordingly, because requiring the plaintiff to exhaust his administrative remedies before bringing his claims to court would conflict with Congressional intent and impose undue hardship on the plaintiff, the motion to dismiss must be denied.
CONCLUSION
Based on the foregoing, the defendants' Motion to Dismiss (#103) is denied.
So Ordered.
MICHAEL HARTMERE Judge of the Superior Court