133 F.3d 1183
 21 Employee Benefits Cas. 2377, 98 Cal. Daily
Op. Serv. 238,
98 Daily Journal D.A.R. 301,
Pens. Plan Guide (CCH) P 23939W
PENSION BENEFIT GUARANTY CORPORATION, Plaintiff-Appellant,
v.
CARTER & TILLERY ENTERPRISES; Southern Properties; Summit
Enterprises Group Ltd.; Larry L. Carter; Cheryl
Carter; Lawrence Carter, Defendants-Appellees.
 No. 96-56255.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1997.
Decided Jan. 9, 1998.
 
 Patrick S. Menasco and Michael O. Mora, Office of the General Counsel, Washington, DC, for plaintiff-appellant.
 David R. Levin, Reish & Luftman, Washington, DC, for defendants-appellees.
 Before: HALL, BRUNETTI and RYMER, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Pension Benefit Guaranty Corporation (PBGC), a United States Government Corporation established under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1302(a), appeals the district court's dismissal without prejudice of its complaint seeking (1) payment of unfunded benefit liabilities under 29 U.S.C. § 1362(b), (2) minimum funding contributions under 29 U.S.C. § 1362(c), and (3) unpaid premiums to the PBGC's pension insurance program under 29 U.S.C. § 1307, in connection with the termination of the Global Industries, Inc. Defined Benefit Pension Plan upon Global Tube Corporation's (Global) Chapter 7 bankruptcy.
 
 
 2
 The district court had jurisdiction under 29 U.S.C. §§ 1303(e), 1307(c). This court has jurisdiction under 28 U.S.C. § 1291. See Farmer v. McDaniel, 98 F.3d 1548, 1552 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1474, 137 L.Ed.2d 686 (1997) (dismissal for failure to exhaust remedies is a final, appealable order under § 1291). We reverse.
 
 
 3
 * Global established the Global Industries, Inc. Defined Benefit Pension Plan (Pension Plan), a single-employer plan, to provide pension benefits to its employees. Global ceased business operations on October 30, 1987, and filed a bankruptcy petition on November 5, 1987. In February 1992, the PBGC and the Pension Plan administrator agreed to terminate the Pension Plan and appoint the PBGC as trustee of the Pension Plan. They fixed the Pension Plan's termination date at December 30, 1989.
 
 
 4
 As of the date of the distress termination, Defendants were allegedly members of Global's "controlled group" within the meaning of Title IV of ERISA and thus liable for unfunded liabilities under § 1362(b), contributions pursuant to § 1362(c), and premiums pursuant to § 1307. Accordingly, on November 7, 1995, the PBGC issued an initial determination letter informing Defendants that they were liable to the PBGC for these unfunded liabilities, contributions, and premiums. Defendants were also notified of their right to appeal this determination.
 
 
 5
 On December 21, 1995, Defendants filed an appeal with the PBGC. In addition, Defendants received an extension of time in which to file a supplemental appeal once the PBGC responded to Defendants' Freedom of Information Act requests for additional information. During this time, the statute of limitations for the PBGC to file suit against Defendants was running out. The parties attempted to negotiate an extension of the limitations period. However, when no agreement was reached, the PBGC went ahead and filed this action in district court on December 29, 1995, two days before the statute of limitations ran out, seeking payment of the unfunded liabilities, contributions, and premiums.
 
 
 6
 The district court dismissed without prejudice the PBGC action determining that (1) § 1368 provides the exclusive remedy for collecting § 1362 liabilities, therefore, the PBGC was required to first obtain a lien before filing an action in the district court, and (2) the PBGC did not exhaust its own administrative appeals process before filing suit for premiums owed under § 1307. The PBGC appeals both of these determinations.
 
 II
 
 7
 The first issue on appeal is whether the PBGC must collect unfunded liabilities and contributions under § 1368, or whether the PBGC may choose to proceed under either § 1303 or § 1368. According to the district court, § 1368 provides the exclusive mechanism for enforcing § 1362 liability for unfunded liabilities and contributions. Therefore, because the PBGC failed to obtain a lien on Defendants' property, as required under § 1368, it had not satisfied the statutory prerequisites to filing suit in the district court. We disagree and instead hold that § 1368 and § 1303 are alternative mechanisms for collecting unfunded liabilities and contributions.
 
 
 8
 Looking to the plain language of § 1303 and § 1368, there is no indication that Congress intended them to be anything but alternative mechanisms for collecting § 1362 liabilities.[1] Both subsections contain permissive language, and neither subsection suggests that it is the exclusive collection mechanism. A straightforward reading of these subsections leads us to the conclusion that Congress intended to offer the PBGC a choice of collection mechanisms; the PBGC can either commence suit under § 1303 as a general judgment creditor, or impose a lien under § 1368 for the amount due, giving the PBGC a foreclosable security interest on the liable party's property. This interpretation, giving the PBGC a selection of collection tools, furthers one of Congress' central purposes in creating the PBGC, "to prevent the 'great personal tragedy' suffered by employees whose vested benefits are not paid when pension plans are terminated." Nachman Corp. v. PBGC, 446 U.S. 359, 374, 100 S.Ct. 1723, 1732-33, 64 L.Ed.2d 354 (1980) (citations omitted).
 
 
 9
 We reject the district court's interpretation that because § 1368(d)(2) clearly provides the exclusive statute of limitations for liabilities imposed under § 1362, it must also provide the exclusive means to enforce § 1362 liability. A more sensible reading of § 1368(d)(2) suggests that it is merely a statute of limitations governing the enforcement of a § 1368 lien.
 
 Section 1368(d)(2) provides:
 
 10
 The liability imposed by section 1362, 1363, or 1364 of this title may be collected by a proceeding in court if the proceeding is commenced within 6 years after the date upon which the plan was terminated or prior to the expiration of any period for collection agreed upon in writing by the corporation and the liable person before the expiration of such 6-year period.
 
 
 11
 Reading this language out of context may suggest that any collection of § 1362 liability is covered by this statute of limitations provision. However, "[w]hen we look to the plain language of a statute in order to interpret its meaning, we do more than view words or sub-sections in isolation. We derive meaning from context, and this requires reading the relevant statutory provisions as a whole." In re Rufener Constr., Inc., 53 F.3d 1064, 1067 (9th Cir.1995). Looking at § 1368 as a whole, we find the district court's interpretation to be untenable. Section 1368 is entitled "Lien for liability" and each provision in § 1368 deals exclusively with liens: section 1368(a) describes the creation of a lien; section 1368(b) sets forth the duration of the lien; section 1368(c) explains the priority of the lien in relation to other statutory liens; section 1368(d)(1) grants the PBGC the power to enforce the lien in district court; and section 1368(e) describes release and subordination of the lien. A natural reading of § 1368 therefore indicates that § 1368(d)(1) gives the PBGC the right to enforce its lien in district court and § 1368(d)(2) places a statute of limitations on the PBGC's enforcement of that lien, not on its ability to collect the full liability due under § 1362.
 
 
 12
 Based on our reading of § 1303 and § 1368, we find that the district court erred in its statutory interpretation that § 1368 is the exclusive mechanism for collecting § 1362 liabilities. Instead, it appears that § 1362 liabilities may be collected under either § 1303 or § 1368. Because the PBGC filed suit in district court under § 1303, and not § 1368, it was not required to first secure a lien on Defendants' property. Therefore, dismissal on this ground was improper.
 
 III
 
 13
 The second issue on appeal is whether the district court erred in dismissing the PBGC's claim for premiums owed under § 1307 because the PBGC failed to complete its own administrative review process, as set forth in 29 C.F.R. § 4003, before filing suit in district court. Defendants argue for an expansion of this ruling to include the § 1362 liabilities, contending that § 4003 also applies to the collection of unfunded liabilities and contributions. We agree that § 4003 applies to both the collection of premiums under § 1307 and unfunded liabilities under § 1362; however, it does not apply to the collection of contributions. See 29 C.F.R. § 4003.1(b)(2) & (9).
 
 
 14
 According to the PBGC regulations, an administrative review process is in place to determine Defendants' liability for unfunded liabilities and premiums. Following an initial determination of liability, the PBGC notifies the liable party of its liability and its right to reconsideration or appeal of this determination. 29 C.F.R. §§ 4003.21, 4003.31, 4003.51. The initial determination does not become effective until the time for filing an appeal has elapsed or the PBGC has made a decision on a request for review. 29 C.F.R. § 4003.22(a). Alternatively, the PBGC may circumvent this review process by making its initial determination effective on the date issued. 29 C.F.R. § 4003.22(b).
 
 
 15
 In this case, the PBGC sent Defendants an initial determination letter and did not circumvent the review process. Defendants then filed an appeal. In the face of a statute of limitations problem, the PBGC did not resolve Defendants' appeal but instead filed suit in the district court. The district court dismissed the case without prejudice, directing the PBGC to complete the administrative appeals process before filing suit.
 
 
 16
 The regulatory procedures set forth in § 4003 do not create a jurisdictional bar to the district court's consideration of the PBGC's claims. See McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs.") (citations omitted); see also Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir.1987). Instead, "when, as in this case, the exhaustion requirement is created by agency regulations, the decision whether to require exhaustion is a matter for district court discretion." Kobleur v. Group Hospitalization & Med. Servs., 954 F.2d 705, 711 (11th Cir.1992). Therefore, we review the district court's decision to dismiss for failure to complete the administrative review process for an abuse of discretion.
 
 
 17
 We find that the district court abused its discretion by dismissing the case for the completion of the administrative review process. Under the circumstances, the district court had three options:
 
 
 18
 The district court may allow the action to proceed immediately, it may dismiss the action pending exhaustion of administrative remedies, or it may stay its own proceedings pending administrative review. In most cases, particularly where a statute of limitations problem might develop, the third alternative may represent the best accommodation of the competing interests.
 
 
 19
 Morrison-Knudsen, 811 F.2d at 1223 (emphasis added) (citations omitted). In this case, the PBGC faced a statute of limitations problem. Initially the PBGC attempted to negotiate an extension of the statute of limitations period with the Defendants. However, according to the PBGC, as the period approached its final weeks, the Defendants simply stopped returning the PBGC's phone calls. The PBGC then filed suit in the district court and requested a stay after Defendants made a motion to dismiss the complaint. Despite the situation, the district court chose to deny the PBGC's request for a stay and dismissed the action. While the dismissal was without prejudice, given the statute of limitations problem, the dismissal was effectively with prejudice. As a result, the PBGC was barred from collecting over $100,000 in unfunded liabilities and premiums. Under the circumstances, we find that the district court abused its discretion in dismissing the case. We believe that a stay of proceedings would have been a more appropriate resolution and remand for that purpose.
 
 
 20
 REVERSED AND REMANDED.
 
 
 
 [1]
 Section 1303(e)(1) provides:
 Civil actions may be brought by the corporation for appropriate relief, legal or equitable or both, to enforce (A) the provisions of this subchapter....
 (emphasis added).
 Section 1368(d)(1) provides:
 In any case where there has been a refusal or neglect to pay the liability imposed under section 1362, 1363, or 1364 of this title, the corporation may bring civil action in a district court of the United States to enforce the lien of the corporation under this section with respect to such liability....
 (emphasis added).