**Wilson ESPINAL**

v.

**Myrna PERE, District Director United States Immigration & Naturalization Service**

**No. 01–1620(DRD).**

United States District Court, D. Puerto Rico.

June 5, 2001.

Madeline Garcia–Rodriguez, Guaynabo, PR, for plaintiff.

Camille L. Velez–Rive, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, PR, for defendant.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Plaintiff, Wilson Espinal has filed an injunction and declaratory relief complaint under 28 U.S.C. § 2201. He further requests attorney fees under 28 U.S.C. § 2412.

Plaintiff, pursuant to the complaint is an illegal alien that entered Puerto Rico on May 2, 2000. Plaintiff was passing through to St. Maarteen as a TWOV (transit without visa) but instead of continuing to St. Maarteen, entered the United States at the International Airport. Plaintiff surreptitiously entered the wrong customs line and showed a fraudulent stamp of inspection and admission to the United States Immigration Inspector. He subsequently married a United States citizen on April 10, 2001.

Espinal was apprehended on April 4, 2001 by the authorities when he visited the Immigration and Naturalization offices in Guaynabo, Puerto Rico, for the purpose of adjustment of status under Section 245(i), as amended by the Legal Immigration and Family Equity Act law enacted on December 21, 2000 (hereinafter referred to as "LIFE Act"). Espinal, later in April 26, 2001 filed a petition to classify alien relative before INS Vermont Service Station.

The United States has commenced detaining and removal proceedings under the law, because Espinal has not been admitted or paroled. Plaintiff requests that the United States be enjoined because he is

entitled to substantive due process granted under the "LIFE Act". Plaintiff claims that he is entitled to the remedies under the LIFE Act because the Act promotes family unity by legalizing illegal immigrants status. Illegal aliens were granted a window until April 30, 2001 to adjust their illegal status by a renewal of Section 245(i) of INA. The illegal aliens are required to comply with the following requirements: (1) entered the United States without having been inspected, admitted or paroled; (2) a qualifying relationship (*i.e.:* USC spouse); (3) been present in the United States on December 21, 2000, the date of enactment of LIFE; (4) no prior orders of removal; (5) no prior criminal record. However, "[a]lthough the LIFE Act provides relief for a number of individuals seeking to become lawful permanent residents, ... **it is not amnesty for all persons unlawfully in the United States**," News Release, U.S. Department of Justice, Immigration and Naturalization Service, Washington D.C. 20536, **INS Implements Section 245(i) Provision of the LIFE Act.** Exhibit "A" Complaint. (Emphasis ours).[1]

The United States alleges that plaintiff is one of the aliens "unlawfully in the United States" not covered by the amnesty. The United States avers that plaintiff Espinal is not qualified because he did not enter without inspection, hence, he is considered an "arriving alien". Arriving aliens cannot be allowed to adjust status under Section 245(i). Espinal, according to the United States was an alien seeking transit to the United States, attempting to enter the United States at a port-of-entry and as such is an "arriving alien". 8 C.F.R. 1.1(q). Arriving aliens are not afforded adjustment of status under the law. In order to qualify for adjustment, the application of the alien is required to be approvable when filed. The Government's contention is that plaintiff's adjustment of status was not approvable at the time filed.[2]

■ The Court neither agrees or disagrees with the United States analysis as to the merits. However, the Court is of the opinion that plaintiff must exhaust his administrative remedies as set forth under the law and that plaintiff, having failed to exhaust, the Court lacks jurisdiction pursuant to the mandate of the law. This court explains. Since the plaintiff has been placed in removal proceedings after April, 1997, the transitional rules set forth in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3005 (1996) applies. *Mendes v. INS,* 197 F.3d 6, 11 (1st Cir. 1999). Section 242(g) of the Act, "IIRIRA" mandates that judicial review of removal orders take place in the court of appeals by means of a petition for review, after an alien has properly exhausted his administrative remedies 8 U.S.C § 1252(a), (b)(9), (d)(g)., The removal order is reviewable "only if ... the alien has exhausted all administrative remedies available to the to the alien as of right" 8 U.S.C. § 1252(d)(1); *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 940–942, 142 L.Ed.2d 940 (1999).

■ The exhaustion in the instant case is a remedy which is not futile to undertake simply because on the one hand, plaintiff alleges that he is an alien covered

---

1. The Memorandum for Regional Directors, April 27, 2001, included as Exhibit "B" of the complaint, as to Removal Proceedings under Section 245(i), clearly states that although "field offices shall not initiate removal proceedings", the same is applicable to "[aliens] eligible for adjustment under Section 245(i)." (Emphasis ours).

2. Defendants' Motion in Compliance with Order to Show Cause, # 5, p. 19–20.

by the LIFE Act remedies and on the other, the United States alleges that he is not covered. There is therefore a controversy as to coverage under the law. There is presently an administrative apparatus in place with a recognized expertise which has been created to decide the matter, subject to judicial review to the Court of Appeals. ("The Petition for review shall be filed with the Court of Appeals for the judicial circuit in which the Immigration Judge completed the proceedings". 8 U.S.C. § 1252(b)(2)).

Plaintiff insists that he is entitled to the due process of law under the LIFE Act. However, there is an *a priori* determination that must be made as to coverage under the Act. Coverage under the Act must be determined by proper exhaustion of administrative remedies.

"The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise."

*McKart v. United States,* 395 U.S. 185, 193–194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

Further, in *McCarthy v. Madigan,* 503 U.S. 140, 146, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), the Court clearly expressed that "agencies and not the court ought to have primary responsibility for the programs that Congress has charged them to administer". Deference is owed to the interpretation of a law provided by the agency.

"More generally, agency determinations are to be upheld unless they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The agency's application of a statute's terms to the facts of a particular case has been accorded considerable deference if application requires the agency's expertise."

*Federal–Mogul Corp. v. U.S,* 63 F.3d 1572 (Fed.Cir.1995).

The case cited by plaintiff, *Torres–Aguilar v. Immigration and Naturalization Service,* 246 F. 3rd 1267, 1269 (9th Cir.) (2001), precisely states that in cases that "involve the application of law to facts, the court retains jurisdiction for direct review." Hence, in cases of coverage under this law, the court of appeals has review jurisdiction after exhaustion of administrative remedies.[3]

---

**3.** Other cases cited by plaintiff, namely *Catholic Social Services, Inc. v. I.N.S.,* 232 F.3d 1139 (9th Cir.2000) and *Barahona–Gomez v. Reno,* 236 F.3d 1115 (9th Cir.2001), address issues that are not under the consideration of this Court and do not support the plaintiff's contention.. In *Catholic Social Services, Inc.,* plaintiffs challenged the advance parole policy of the Immigration and Naturalization Service ("INS"). The Court had to determine whether § 242(g) of the Immigration and Nationality Act, as amended by IIRIRA, 8 U.S.C. § 1252(g), limited the district court's jurisdiction to grant injunctive relief. The Court followed the interpretation established by the Supreme Court in *Reno v. American–Arab*

*Anti–Discrimination Committee, supra,* which states that: "this provision applies only to the three specific discretionary actions mentioned in its text, not to all claims relating in any way to deportation proceedings." But the instance case is precisely one of the specific cases covered under the act, removal proceedings. 8 U.S.C. § 1252(2)(A)(i). Furthermore, in *Torres–Aguilar v. INS, supra,* it was clearly established that: "although we retain jurisdiction to review due process challenges, a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb. To hold otherwise would allow all immigrants subject to the transition-

The substantive due process claim of the plaintiff depends exclusively on being covered under the law. This determination belongs first to the administrative agency. Moreover, due process claims must be made at the administrative hearings and if not made, they are waived. *Mendes v. INS,* 197 F.3d at 12.

■ Further, contrary to the alarm sounded by plaintiff, plaintiff will have the remedy of an appeal of the final decision entered by the administrative law judge ordering removal. The final order of the administrative law judge in a removal case is appealable to the Court of Appeals. 8 U.S.C. § 1252(b)(2).

■ The Court not only finds that plaintiff has failed to exhaust administrative remedies and hence, the Court lacks jurisdiction; but also plaintiff is seeking an injunction to protect the alien from the discretionary function of prosecutorial "commenc[ing] proceedings" for a "removal order." The IIRIRA specifically denies jurisdiction to Court to hear any alien case seeking to stop the Attorney General from commencing proceedings on the removal of an alien. 8 U.S.C. § 1252(g). Section 1252(g) in pertinent part states:

> "Except as provided in this section and not withstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any aline under this chapter."

8 U.S.C. § 1252(g).

Because the instant case clearly seeks an injunctive relief against a potential removal action of an alien, the Court holds that the instant case is governed under the *American–Arab* doctrine stated above and not under the "general collateral challenges to unconstitutional practices and policies used by the agencies." *McNary v. Haitian Refugee Center Inc.,* 498 U.S. 479, 492, 111 S.Ct. 888, 896, 112 L.Ed.2d 1005 (1991). The instant case clearly falls under the legislative ban created by Congress "to oppose judicial constraints upon prosecutorial discretion" as to removal orders. *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. at 485 n. 9, 119 S.Ct. 936.

Further, under the preliminary injunction standards required to be used in this Circuit under *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5–6 (1st Cir.1991), the Court would have been obligated to decline to issue the preliminary injunction request, since plaintiff, based on the "probable outcome" criteria, would have failed as to the principle criteria for the reasons set forth above.[4] For the reasons set forth above, the Court lacks jurisdiction to entertain the above captioned complaint.

IT IS SO ORDERED.

---

al rules to circumvent clear congressional intent to eliminate judicial review over discretionary decisions through the facile device of re-characterization an alleged abuse of discretion as a 'due process' violation." Further, as stated *infra,* cases "involving the application of law to the facts, the [appellate] court retains jurisdiction to review", *Torres–Aguilar v. INS, supra,* at 1270, citing *Kalaw v. INS,* 133 F.3d 1147, 1150–1151 (9th Cir.1997).

4. The issuance of an injunction requires a quadripartite test, taking into account: (1) the likelihood of success on the merits; (2) the potential for irreparable injury; (3) a balancing of the relevant equities (most importantly, the hardship of the nonmovant if the restraint issues as contrasted with the hardship to the movant if interim relief is withheld); and (4) the effect on the public interest of a grant or denial of the restrainer.