Maisie SHENANDOAH; Wilbur Homer; Raymond Obomsawin; Thelma Buss; and Melvin Phillips, individually and as Representatives of the Oneida Nation; Diane Shenandoah; Joanne Shenandoah; Victoria Halsey; Matthew Jones; Leonard Babcock; and Tammy Thomas, Plaintiffs–Appellants,

v.

The UNITED STATES DEPARTMENT OF THE INTERIOR, Bruce Babbitt, as Secretary of the Interior of the United States; The Bureau of Indian Affairs; Ada Deer, as Assistant Secretary of the Interior for Indian Affairs; Franklin

Keel, as Eastern Area Director, Bureau of Indian Affairs; Key Bank of New York; Arthur Raymond Halbritter; and Marilyn John, Defendants–Appellees.

No. 97–6142.

United States Court of Appeals, Second Circuit.

Argued Feb. 2, 1998.

Decided Oct. 6, 1998.

Barbara J. Olshansky, (Alberto G. Santos, Laura Davis, Joan M. Perryman, Michael E. Deutsch, on the brief), Center for Constitutional Rights, New York City, for plaintiffs-appellants.

M. Alice Thurston, United States Department of Justice Environment & Natural Resources Division, Washington, D.C. (Robert L. Klarquist, Edward J. Passarelli Appellate Section, Attorneys at United States Department of Justice Environmental & Natural Resources Division, Lois J. Schiffer, Deputy Assistant Attorney General, Thomas J. Maroney, United States Attorney for the Northern District of New York, William H. Pease, Assistant United States Attorney, Syracuse, N.Y., Scott Keep, David Moran, United States Department of the Interior, on the brief), for Federal defendants-appellees.

William W. Taylor, III (Michael R. Smith, Mark D. Harris, on the brief), Zuckerman, Spaeder, Goldstein, Taylor & Kolker, LLP, Washington, D.C., for defendants-appellees Halbritter and John.

Mark J. Moretti, Phillips, Lytle, Hitchcock, Blaine & Huber, LLP, Rochester, New York, submitted for defendant-appellee Key Bank of New York.

BEFORE: KEARSE, WALKER, Circuit

Judges, and WEINSTEIN, District Judge.*

John M. WALKER, Jr., Circuit Judge.

Plaintiffs-appellants Maisie Shenandoah, *et al.*, members of the Oneida Indian Nation ("Oneida Nation" or "Nation"), appeal from the April 14, 1997 judgment of the United States District Court for the Northern District of New York (Rosemary S. Pooler, *District Judge* ). Plaintiffs' complaint alleged that defendants-appellees, including the United States and certain Nation members that the United States had recognized as leaders of the Nation, violated the National Environmental Policy Act of 1969, 42 U .S.C. §§ 4321, 4332(2)(C) ("NEPA"), the Indian Long–Term Leasing Act, 25 U.S.C. § 415, the Indian Appropriation Act of 1872, 25 U.S.C. § 81, the Indian Civil Rights Act of 1968 ("ICRA"), 25 U.S.C. § 1301 *et seq.*, and Oneida Nation sovereignty; demanded an accounting; and petitioned, pursuant to 25 U.S.C. § 1303, for writs of habeas corpus ("habeas claim"). The district court granted defendants' motion, pursuant to Fed.R.Civ.P. 19, to dismiss plaintiffs' non-habeas claims for a failure to join the Oneida Nation as an indispensable party to the suit. The district court also dismissed plaintiffs' habeas claim for lack of subject matter jurisdiction because plaintiffs failed to allege a sufficiently severe restraint on their liberty.

We agree with the district court that plaintiffs' habeas claim must fail because they have failed to allege a sufficiently severe restraint on their liberty. As to plaintiffs' seven other claims, dismissed by the district court for failure to join the Oneida Nation as an indispensable party, we affirm their dismissal on the alternative ground that plaintiffs failed to exhaust their administrative remedies at the Department of the Interior. The district court's judgment is affirmed.

*Background*

The following facts are taken from plaintiffs' amended complaint. Plaintiffs are individuals who are members of the Oneida Nation, some of whom claim to be the Nation's

traditional leaders or official representatives. Defendant-appellee Arthur Raymond Halbritter is an Oneida Nation member whom the Department of the Interior came to recognize and still recognizes as the Oneida Nation representative. Defendant-appellee Marilyn John is an Oneida Nation member whom Halbritter named to one of the Nation's governing bodies. Defendants-appellees the United States Department of the Interior ("Department"), its Secretary Bruce Babbitt, the Bureau of Indian Affairs ("BIA"), Ada Deer, and Franklin Keel (collectively, the "federal defendants"), are responsible for various aspects of United States and Native American affairs.

In 1977, members of the Oneida Nation appointed Halbritter and two other Nation members as interim representatives of the Nation. On April 25, 1993, the Grand Council, consisting of representatives from all six Iroquois nations, including the Oneida Nation, purported to remove Halbritter from his position as interim Nation representative. The Department acknowledged the removal on August 10, 1993, but the next day stayed its acknowledgment pending BIA review. After requesting the Nation to conduct a referendum to select a representative, the Department agreed to Halbritter's proposal to submit "statement[s] of support" from Nation members. On February 4, 1994, the Department notified Halbritter that it would continue to recognize him as the Nation's permanent representative until such time as he resigned or was removed by the Nation in accordance with certain procedures. According to plaintiffs, on May 21, 1995 the Nation once again removed Halbritter from his position as Oneida representative. Although informed of Halbritter's alleged second removal, the Department had not acted upon that notification by the time of oral argument, and as of the time of this opinion, we have received no information to the contrary.

In 1992 and 1993, while the Nation's first effort to remove Halbritter was ongoing, Halbritter led a project to build a casino on Nation property. In 1994, Halbritter began

---

* The Honorable Jack B. Weinstein, of the United States District Court for the Eastern District of   New York, sitting by designation.

the planning and construction of a hotel to accompany the casino, for which he secured a $25 million loan from defendant-appellee Key Bank of New York. On August 7, 1995, after his second alleged removal as Oneida leader, Halbritter-purportedly acting for the Nation—signed an ordinance creating the "Oneida Land Corporation" ("Corporation"), wholly owned by the Nation and possessed of authority to pledge Nation assets as collateral for the bank loan. Simultaneously, the Nation leased the hotel site to the Corporation and the Corporation in turn pledged the lease as collateral for the Key Bank Loan. On August 21, 1995, despite a request by some Nation members that the Department "suspend any contractual or land negotiations, additional casino developments or expansion until" the issue of Nation leadership was resolved, BIA Acting Eastern Area Director Franklin Keel reviewed the ordinance, the lease, and the Key Bank loan agreement, and approved the lease. All of the documents necessary to the foregoing transaction were executed by Halbritter on behalf of the Oneida Nation.

On September 22, 1995, six of the plaintiffs, "on behalf of the Nation," appealed Keel's lease approval to the BIA. Following a brief stay by the BIA, on October 5, 1995 Assistant Secretary of the Interior for Indian Affairs Ada Deer, also a defendant-appellee, assumed jurisdiction of the appeal and rescinded the stay. On March 20, 1996, plaintiffs informed Deer that, in light of the lifting of the stay and the Department's apparent refusal to reconsider its recognition of Halbritter as Nation representative, federal court was the only proper forum to review Acting Director Keel's lease approval. The defendants expressed their disagreement and in July, August, and September 1996 the BIA received briefing on issues raised by the administrative appeal. As of the time of oral argument, that administrative appeal was still pending.

On February 13, 1996, plaintiffs filed this action. Their amended complaint asserts eight causes of action. Plaintiffs allege that the federal defendants: (1) failed to prepare an environmental impact statement for the hotel in violation of NEPA, 42 U.S.C. § 4332(2)(C); (2) approved the lease agreement without considering possible effects on the environment, in violation of the Indian Long–Term Leasing Act, 25 U.S.C. § 415; (3) failed to review the loan agreement with Key Bank in violation of the Indian Appropriation Act of 1872, 25 U.S.C. § 81; (4) continued to recognize Halbritter as Nation representative in violation of the Nation's sovereignty; and (5) injured the civil rights of Nation members by virtue of Halbritter's recognition as Nation representative, in violation of ICRA, 25 U.S.C. § 1302. With respect to defendant Halbritter, plaintiffs demand (6) an accounting of all Nation assets under his control; and (7) the return from Halbritter of all net proceeds of Nation businesses under his control. Finally, six plaintiffs on behalf of themselves and others similarly situated assert an eighth cause of action against Halbritter and John, seeking writs of habeas corpus pursuant to ICRA, 25 U.S.C. § 1303, for alleged deprivations of plaintiffs' liberty.

Defendants moved to dismiss the entire action, *inter alia*, for failure to join the Oneida Nation as an indispensable party pursuant to Fed.R.Civ.P. 19, failure to state a claim as to a number of the claims pursuant to Fed. R.Civ.P. 12(b)(6), failure to exhaust administrative remedies at the Department, and lack of subject matter jurisdiction over the habeas claim. The district court dismissed the first seven claims on the basis that plaintiffs failed to join the Oneida Nation as an indispensable party to the suit, and that joinder was precluded by the Nation's sovereign immunity. *See Shenandoah v. United States Dep't of the Interior*, No. 96–CV–258, 1997 WL 214947, at *6 (N.D.N.Y. April 14, 1997). The district court dismissed the eighth claim on the ground that the complaint failed to allege "sufficiently severe restraints on [plaintiffs'] liberties" to sustain a valid habeas claim within ICRA. *Id.* at *9. Plaintiffs now appeal.

### Discussion

#### I. *Exhaustion of Administrative Remedies*

■ The federal defendants contend that the complaint's first five claims are currently being litigated in a pending appeal before the

Department of the Interior and therefore have not been exhausted.

According to plaintiffs, the following issues are before the BIA: (i) the authority of the signatories of the lease agreement to enter into the transaction; (ii) "the environmental impacts attendant to the activities contemplated by the transaction, [which] violated the statutory ... requirements imposed on the Department under 25 U.S.C. §§ 81 and 415(a)"; and (iii) the Department's alleged "violation of the sovereignty of the Oneida Nation." Appellant's Br. at 3. We also note that plaintiffs' notice of appeal to the BIA requested "[a]n evidentiary hearing on the issue of the authority of [ ] Halbritter to represent the Oneida Nation in any capacity" and that the BIA has stated that "[t]he essence of appellants' appeal ... is that Halbritter is not an authorized representative of the Nation, and therefore lacked authority to sign the ground lease indenture."

Plainly, the BIA's decision whether to continue to recognize Halbritter as Nation representative may directly affect plaintiffs' first five claims in the instant action, all of which are directed at the federal defendants. Should the Department determine that Halbritter is not the Nation's representative, then Halbritter may not have had authority to execute the lease agreements and the Department may retract its approval of the lease. In that event, all of plaintiffs' first five claims, which arise from the Department's lease approval, would no longer exist.

Plaintiffs contend that, notwithstanding the pending administrative appeal, the Department has made a final determination as to their first five claims and they are therefore entitled to pursue those claims in federal court. Plaintiffs rely on 5 U.S.C. § 704, which provides that

[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject

to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

When the Assistant Secretary made the lease approval effective on October 5, 1995, plaintiffs contend, that approval became "operative and hence final" and, notwithstanding plaintiffs' administrative appeal, the Department's decision was administratively exhausted.[1] We disagree.

■ Assuming that Keel's lease approval was a final agency decision because it was made operative pending appeal, an issue as to which we express no opinion, we must still conclude in this unusual case that plaintiffs have failed to exhaust their administrative remedies. Acting Director Keel issued *no* decision as to whether, in light of Halbritter's second purported removal, Halbritter remains the Oneida Nation's representative. This issue, raised by plaintiffs in the notice of appeal to the BIA, is the critical issue that underlies plaintiffs' complaint and must be resolved before the BIA can decide whether to affirm the lease approval. Moreover, in the absence of an initial determination by the Department, the issue of Oneida leadership, which involves questions of tribal law, is not properly resolved by a federal court. *See, e.g., Runs After v. United States,* 766 F.2d 347, 351–53 (8th Cir.1985) (asserting jurisdiction to review BIA's refusal to require new elections to tribal council but not to review legality of Tribal Council resolutions under tribal constitution); *Goodface v. Grassrope,* 708 F.2d 335, 338–39 (8th Cir.1983) (asserting jurisdiction to force BIA to recognize a tribal council but, where there was functioning tribal court recognized by both parties, declining to assert jurisdiction to determine merits of

---

1. Plaintiffs cite 25 C.F.R. § 2.6(a) for the same proposition. That section states: "No decision ... subject to appeal ... in the Department, shall be considered final so as to constitute Depart-

mental action subject to judicial review under 5 U.S.C. § 704, unless when an appeal is filed ... the decision be made effective immediately."

election dispute under tribal constitution). Indeed,

> the BIA has special expertise and extensive experience in dealing with Indian affairs. The interest of the BIA and its parent Department of Interior in administrative autonomy also supports requiring exhaustion of administrative remedies. Moreover ... the somewhat anomalous and complex relationship between the quasi-sovereign Indian tribes and the federal government also supports, in general, requiring appellants initially to seek an administrative solution through the BIA and the Department of Interior.

*Runs After,* 766 F.2d at 352.

The exhaustion doctrine "prevent[s] premature interference with agency processes," provides the agency "an opportunity to correct its own errors, [and] afford[s] the parties and the courts the benefit of its experience and expertise." *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *see McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Exhaustion may also "[moot] a judicial controversy.... And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context" or where as here the underlying issues are particularly within the agency's expertise. *Id.* at 145, 112 S.Ct. 1081. All of these interests will be served by dismissing plaintiffs' first five claims on exhaustion grounds. The BIA's determination that Halbritter does not represent the Nation may well moot plaintiffs' claims. Even if the BIA ultimately reaffirms Halbritter's right to represent the Nation, federal courts will have the benefit of a full record and a determination by an agency with special expertise over the issue. In light of the fact that the Department has before it an appeal

in which the issue of Nation leadership has been raised and must be determined, we think it appropriate to afford the Department an opportunity in the first instance to decide this threshold issue upon which plaintiffs' first five claims may turn.[2]

## II. *Habeas Claim*

■ Six of the plaintiffs, on behalf of themselves and others similarly situated, claim that defendants Halbritter and John imposed severe restraints on their liberty in violation of ICRA, 25 U.S.C. § 1302, and appeal from the district court's dismissal of their petition for a writ of habeas corpus pursuant to 25 U.S.C. § 1303. The district court dismissed this claim for lack of subject matter jurisdiction on the basis that the deprivations of liberty alleged in plaintiffs' complaint were not of sufficient severity to fall within ICRA's habeas provision.[3] "We review the district court's conclusions regarding its subject matter jurisdiction *de novo.*" *Plumbing Indus. Bd. v. E.W. Howell Co.,* 126 F.3d 61, 65 (2d Cir.1997).

■ Although Title I of ICRA lists a number of substantive rights afforded to individuals that serve to restrict the power of tribal governments, *see* 25 U.S.C. § 1302, Title I does not establish or imply a federal civil cause of action to remedy violations of § 1302. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 72, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); *Poodry v. Tonawanda Band of Seneca Indians,* 85 F.3d 874, 884 (2d Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 610, 136 L.Ed.2d 535 (1996). Rather, "Title I of the ICRA identifies explicitly only one federal court procedure for enforcement of the substantive guarantees of § 1302: § 1303 makes available to any person '[t]he privilege of the writ of habeas corpus ..., in a court of the United States, to test the legality of his detention by order of an Indian tribe.' "

---

**2.** Defendants-appellees claim that plaintiffs' NEPA, 25 U.S.C. § 415, and 25 U.S.C. § 81 claims are moot because (allegedly) the lease that the Department approved has been terminated, the loan has been fully repaid, and the hotel construction project to which the lease related has been completed. In light of plaintiffs' failure to exhaust administrative remedies before insti-

tuting the instant action, we do not consider the merits of this claim.

**3.** In light of its dismissal of the habeas claim, the district court did not decide whether to certify, pursuant to Fed.R.Civ.P. 23, the six plaintiffs' proposed class. *See Shenandoah,* 1997 WL 214947, at *9.

*Poodry,* 85 F.3d at 882 (quoting 25 U.S.C. § 1303). "[S]ection 1303 was intended by Congress to have no broader reach than the cognate statutory provisions governing collateral review of state and federal action," *id.* at 901 (Jacobs, J., dissenting); *accord id.* at 879–80 (majority opinion), and thus plaintiffs must allege that defendants posed a "severe actual or potential restraint on [their] liberty," *id.* at 880.

Plaintiffs' complaint alleges that one or more of the six plaintiffs were suspended or terminated from employment positions, lost their "voice[s]" within the Nation's governing bodies, lost health insurance, were denied admittance into the Nation's health center, lost quarterly distributions paid to all Nation members, were banned from various businesses and recreational facilities such as the casino, Turning Stone park, the gym, and the Bingo hall, were stricken from Nation membership rolls, were prohibited from speaking with a few other Nation members, and were not sent Nation mailings. The complaint also alleges that one member of Halbritter's governing Men's Council threw a large rock at one of the plaintiffs and grabbed that plaintiff through a car window.

█ Although the alleged misconduct, if true, is serious, it is insufficient to bring plaintiffs within ICRA's habeas provision. Habeas relief does address more than actual physical custody, and includes parole, probation, release on one's own recognizance pending sentencing or trial, and permanent banishment. *Poodry,* 85 F.3d at 893–94, 897 (collecting cases). The punishment that the petitioners faced in *Poodry,* however, was considerably more severe than the punishments alleged by plaintiffs. In *Poodry,* the petitioners were "convicted [ ] of treason," sentenced to "permanent banishment," and "stripped of ... Indian citizenship"; their names were "removed from the Tribal rolls"; and they "permanently [lost] any and all rights afforded [tribal] members." *Id.* at 876, 878 (quotation marks omitted). Although petitioners there were not actually ejected from the reservation, a divided panel held that these deprivations of liberty, including a sentence of "permanent banishment," were sufficiently severe to bring peti-

tioners within ICRA's habeas provision. In contrast, plaintiffs in the instant case have not alleged that they were banished from the Nation, deprived of tribal membership, convicted of any crime, or that defendants attempted in anyway to remove them from Oneida territory. Accordingly, we conclude that plaintiffs have not alleged a "severe actual or potential restraint on [their] liberty," *id.* at 880, and affirm the district court's dismissal of this claim.

## IV. *State Claims Against Halbritter*

Plaintiffs' sixth and seventh claims demand from Halbritter an accounting of all Nation assets and the return of all net proceeds of Nation businesses under his control. To the extent that these claims depend upon the Department's resolution of the question of Oneida Nation leadership, they are not exhausted. *See, e.g.,* Amended Complaint ¶ 175 ("The Nation's removal of Halbritter ... demand[s] that the monies received by Halbritter in the form of net proceeds from the operation of Oneida Nation businesses be paid over to the Nation."). In any event, these claims arise under New York state, not federal, law. *See id.* at ¶¶ 3, 5. In light of our affirmance of the dismissal of all of plaintiffs' federal claims, we decline to exercise supplemental jurisdiction over these New York state law claims. *See* 28 U.S.C. § 1367(c)(3); *Castellano v. City of New York,* 142 F.3d 58, 74 (2d Cir.1998).

## V. *Propriety of Dismissal Pursuant to Fed. R.Civ.P. 19*

Finally, because the issue could arise again in future proceedings in this case, we discuss the district court's ground for dismissal of the first seven claims. The district court held that plaintiffs failed to join the Oneida Nation as an indispensable party to the suit, and that joinder was precluded by the Nation's sovereign immunity. *See Shenandoah,* 1997 WL 214947, at *4 (citing *Fluent v. Salamanca Indian Lease Auth.,* 928 F.2d 542, 547–48 (2d Cir.1991)). Assuming that the Nation is indispensable to the suit, it is not clear to us that the Nation is an absent party. The plaintiffs purport to represent (and thereby waive the immunity of) a sover-

eign Native American nation. The district court's observation that "if plaintiffs possessed authority to waive sovereign immunity, then they would also possess the power to themselves fashion the relief they seek from the district court," *Shenandoah*, 1997 WL 214947, at *6, disregards the possibility that Halbritter improperly usurped control over the Nation.

Because the issue of who represents the Oneida Nation after Halbritter's second purported removal has not been determined by the Department (and indeed, is the basis for dismissal for lack of administrative exhaustion), the district court prematurely determined that plaintiffs do not represent the Nation and therefore that the Nation is an absent party. Indeed, the district court's implicit finding that plaintiffs do not represent the Nation is inconsistent with the presumptive validity courts are to bestow a plaintiff's allegations at the pleading stage. Even had the Department determined that Halbritter represented the Nation notwithstanding his second purported removal, we are not certain that dismissing plaintiffs' complaint on Rule 19 grounds would be consistent with our duty to review such agency determinations. Although tribal law issues are "generally a matter for the other two branches of government to determine[,].... were the court to decline to review [a] sovereign immunity ruling, then the Department's recognition decisions would be unreviewable, contrary to the presumption in favor of judicial review of agency action." *Cherokee Nation of Oklahoma v. Babbitt*, 117 F.3d 1489, 1498–99 (D.C.Cir.1997).

In sum, we question the district court's basis for dismissal of the first seven claims in the complaint, but in view of our dismissal of those claims on exhaustion grounds, need not definitively decide the issue.

### Conclusion

For the reasons set forth above, the judgment of the district court is affirmed. Plaintiffs' first seven claims are dismissed for failure to exhaust administrative remedies at the Department, but without prejudice to reinstatement following exhaustion. Each party shall bear its own costs.