Philip DiBARTOLO Plaintiff

v.

CITY OF PHILADELPHIA,
et al.  Defendants

No. Civ.A. 99–1734.

United States District Court,
E.D. Pennsylvania.

Feb. 21, 2001.

**796**

Mark B. Frost, Frost, Szymanski and Zeff, Philadelphia, PA, Josephine Carabello Patti, Josephine M. Carabello, Frost & Zeff, Phila, PA, for Philip Dibartolo, Plaintiff.

Stephen C. Miller, City of Philadelphia Law Dept., Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

KAUFFMAN, District Judge.

### I. BACKGROUND

In this "reverse discrimination" case, Plaintiff Philip DiBartolo ("DiBartolo") asserts causes of action under 42 U.S.C. §§ 1983, 1985, and 1988; the antiretaliation provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a); and Pennsylvania statutory and common law. Defendants are the City of Philadelphia (the "City") and seven City employees: Health Commissioner Estelle Richman ("Richman"); Personnel Director Linda Seyda ("Seyda"); Human Resources Director for the Health Department Joseph McNally ("McNally"); Director of the AIDS Activities Coordinating Office ("AACO") Jesse Milan ("Milan"); and three co-directors of AACO, Dr. Bruce Davidson ("Davidson"), Patricia Bass ("Bass"), and Joseph Cronauer ("Cronauer") (collectively, "Defendants"). Plaintiff claims, among other things, that Defendants "have engaged in a pattern and practice of discriminating against [him] on the basis of [his] race, white and sexual orientation, heterosexual." (2nd Am. Compl. at ¶ 96.) Now before the Court is Defendants' Motion to Dismiss Portions of Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(6). For the reasons which follow, the Motion will be granted in part and denied in part.

### I. BACKGROUND

#### A. Alleged Factual History [1]

DiBartolo began working as a Disease Intervention Specialist in the City's Sexually Transmitted Disease Program in January 1987.[2] (2nd Am. Compl. at ¶ 23.) He was responsible for tracking patients with sexually transmitted diseases at health clinics within the City. (2nd Am. Compl. at ¶ 23.) From January 25, 1988 until December 31, 1992, he worked in the Disease Surveillance Unit's AIDS Program as an Investigator, a supervisory position. (2nd Am. Compl. at ¶ 25.) In February 1989, he transferred to the AIDS Activities Coordinating Office (the "AACO"), where he worked as a Manager of the HIV Sero-

---

1. When determining a Motion to Dismiss, the court must accept as true all well pleaded allegations in the complaint and view them in the light most favorable to the Plaintiff. *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir.1985).

2. DiBartolo initially was employed as a contract employee, but became a civil service employee on November 7, 1988. (2nd Am. Compl. at ¶¶ 23–24.)

prevalence Program. (2nd Am. Compl. at ¶ 26.) In 1992, the HIV Seroprevalence Program lost its funding, and DiBartolo accepted a supervisory position in the Tuberculosis Control Program (the "TB Unit"). (2nd Am. Compl. at ¶ 27.)

In February 1993, Defendant Davidson became director of the TB Unit. (2nd Am. Compl. at ¶ 28.) In June 1993, DiBartolo spoke with Davidson about the lack of supervisory work within the Unit and requested a transfer to a different unit. (2nd Am. Compl. at ¶ 29.) Although positions became available, Davidson filled them with unqualified contract employees and, contrary to the requirements of a collective bargaining agreement, Davidson never notified the union that he was hiring contract employees. (2nd Am. Compl. at ¶¶ 30–32.) On or about March 9, 1994, DiBartolo notified the union that Davidson had been hiring unqualified contract employees and the union filed a class action grievance against the City two days later. (2nd Am. Compl. at ¶¶ 37–38.)

On March 14, 1994, DiBartolo was transferred to the AACO's Prison Unit. (2nd Am. Compl. at ¶ 39.) No work was available for him there, and he was isolated from other employees. (2nd Am. Compl. at ¶ 40.) On March 24, 1994, Davidson completed a negative evaluation of DiBartolo, falsely accusing him of frequently leaving the work area, discussing concerns with co-workers rather than with his supervisor, refusing to meet with the TB Unit director, attending to personal tasks while at work, and parking his car in a reserved lot without authorization. (2nd Am. Compl. at ¶ 41.) DiBartolo appealed the evaluation and requested further review by Defendant Richman. (2nd Am. Compl. at ¶ 42.) As a result of the appeal, the evaluation was withdrawn. (2nd Am. Compl. at ¶ 42.)

In June 1995, Defendant Milan was appointed as the new Director of AACO. (2nd Am. Compl. at ¶ 52.) Milan is African–American and homosexual. (2nd Am. Compl. at ¶ 52.) DiBartolo requested to speak with Milan about work-related matters and career advancement, but received no response. (2nd Am. Compl. at ¶ 53.) DiBartolo remained in the Prison Unit until October 1995. (2nd Am. Compl. at ¶ 54.) While there, he applied for the position of Health Services Program Manager in the AIDS Department. (2nd Am. Compl. at ¶ 44.) Although he was qualified for the position, the Deputy Health Commissioner provisionally appointed Jennifer Kolker ("Kolker"), an unqualified contract employee. (2nd Am. Compl. at ¶ 47.) DiBartolo appealed Kolker's appointment, and she was later removed from the position and transferred to the Commissioner's Office. (2nd Am. Compl. at ¶ 49.) On October 24, 1995, DiBartolo was denied permission to take the exam for the Health Services Manager position on the ground that his graduate work was "incomplete." (2nd Am. Compl. at ¶ 50.) He filed a written appeal of the denial, which was rejected. (2nd Am. Compl. at ¶ 51.)

In October 1995, DiBartolo was assigned to the Housing Program of the AIDS Department. (2nd Am. Compl. at ¶ 54.) On January 10, 1996, Davidson informed Milan and others that DiBartolo had been disruptive and would not be permitted in the TB Unit. (2nd Am. Compl. at ¶ 55.) In July 1996, DiBartolo again was denied permission to take the exam for the Health Services Manager position, this time on the ground that he did not have the required experience. (2nd Am. Compl. at ¶ 60.) DiBartolo submitted a written appeal of the denial to Defendant Seyda. The appeal was denied. (2nd Am. Compl. at ¶¶ 60–62.) He filed a grievance concerning this denial on September 17, 1996 (2nd Am. Compl. at ¶ 62), but has failed to plead the result.

In May and October 1996, DiBartolo assisted eight African–Americans who were suing the City for employment discrimination. (2nd Am. Compl. at ¶ 66.) On December 13, 1996, Milan reprimanded him for insubordination. (2nd Am. Compl. at ¶ 68 .) DiBartolo appealed the reprimand, but has failed to allege the result. (2nd Am. Compl. at ¶ 69.) On December 20, 1996, DiBartolo was notified that his position would be audited. (2nd Am. Compl. at ¶ 70.)

The City conducted a national search for AACO co-directors in March 1997, and ultimately hired Defendants Bass and Cronauer, both of whom were less qualified than DiBartolo for the co-director positions. (2nd Am. Compl. at ¶ 72.) On May 19, 1997, as a result of the audit of his position, DiBartolo was demoted to program analyst. (2nd Am. Compl. at ¶ 73.) McNally was aware that DiBartolo's position had changed but failed to inform him of the change until August 6, 1997. (2nd Am. Compl. at ¶¶ 74 and 82.) DiBartolo spoke with Bass about the position of Health Services Program Manager for Policy and Planning, and Bass told him that she would speak to the Commissioner about the possibility of hiring him for that position. (2nd Am. Compl. at ¶ 75.) DiBartolo later learned that Bass and Cronauer filled the position with another employee who was less qualified than he. (2nd Am. Compl. at ¶ 77.)

In June 1997, DiBartolo requested a transfer from AACO to the TB Unit, but his request was denied. (2nd Am. Compl. at ¶ 79.) Although McNally knew that there was a position available in the TB Unit, he informed DiBartolo that there were no openings in that Unit. (2nd Am. Compl. ¶¶ 84–85.) In July 1997, DiBartolo was criticized for being unwilling to perform the duties of a program analyst. (2nd Am. Compl. at ¶ 80.) Sometime after DiBartolo requested a transfer to the TB

Unit, McNally spoke with him about a non-civil service position with Health Center I. (2nd Am. Compl. at ¶¶ 88–89.) The position with Health Center I had no supervisory responsibilities and would have jeopardized DiBartolo's career advancement. (2nd Am. Compl. at ¶ 91.)

In July 1998, five homosexual, minority, or female individuals were appointed to various positions for which DiBartolo was never considered. (2nd Am. Compl. at ¶¶ 101–102.) On November 5, 1998, DiBartolo was transferred to the Epidemiology Unit with no clearly defined work assignments or supervisory responsibilities. (2nd Am. Compl. at ¶ 103.)

## B. *Procedural History*

On April 6, 1998, DiBartolo filed his Complaint, asserting claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1988; the antiretaliation provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a); and Pennsylvania statutory and common law. Defendants filed Motions to Dismiss on July 9, 1999. Plaintiff responded to the Motions to Dismiss and filed an Amended Complaint on August 6, 1999. The City of Philadelphia filed a Motion to Dismiss the Amended Complaint on August 27, 1999. Plaintiff responded to the Motion to Dismiss the Amended Complaint on September 23, 1999. On February 15, 2000, the Court ruled on the Motions to Dismiss, granting the Motions in part and denying them in part. *DiBartolo v. City of Philadelphia*, 2000 WL 217746 (E.D.Pa. Feb.15, 2000). On March 14, 2000, Plaintiff filed his Second Amended Complaint. Defendants filed their Motion to Dismiss Portions of the Second Amended Complaint on March 21, 2000, requesting dismissal of the claim for breach of contract in Count V of the Second Amended Complaint, the claim for violations of the Pennsylvania Constitution in Count

VII of the Second Amended Complaint, and all of the claims against Defendant McNally. Plaintiff filed his response to the Motion on April 3, 2000.

## II. STANDARD OF REVIEW

When determining a Motion to Dismiss pursuant to Rule 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). The court must accept as true all well pleaded allegations in the complaint and view them in the light most favorable to the Plaintiff. *Angelastro v. Prudential–Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted when a Plaintiff cannot prove any set of facts, consistent with the complaint, which would entitle him or her to relief. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

## III. ANALYSIS

### A. DiBartolo's Claim for Breach of Contract

DiBartolo claims in Count V of the Second Amended Complaint that the actions of Defendants constitute a breach of contract. (2nd Am. Compl. at ¶ 139.) Defendants City of Philadelphia, Richman, Seyda and McNally had requested, as part of their Motion to Dismiss the original Complaint, that DiBartolo be required to provide a more definite statement of this claim pursuant to Fed.R.Civ.P. 12(e). The Court denied this request and determined that DiBartolo had sufficiently pleaded a cause of action for breach of the Collective Bargaining Agreement ("CBA") between DiBartolo's union and the City of Philadelphia. *DiBartolo v. City of Philadelphia*,

2000 WL 217746,*7 (E.D.Pa. Feb. 15, 2000).

In their Motion to Dismiss Portions of the Second Amended Complaint, Defendants argue that Plaintiff's claim for breach of the CBA should be dismissed because DiBartolo, like all other members of Local 2186, must pursue and exhaust administrative remedies for breaches of the CBA.[3] (Def.'s Mem. of Law at 5.) Plaintiff responds that he did file two grievances and that he should be excused from exhausting his administrative remedies because exhaustion would be futile. (Pl.'s Resp. at 16–17.)

■ Pennsylvania's Public Employee Relations Act, 43 Pa. Stat. Ann. §§ 1101.101—1101.2201 (1991), requires the mandatory arbitration of "disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement." 43 Pa. Stat. Ann. § 1101.903. Therefore, this Court lacks jurisdiction to hear DiBartolo's claim for breach of contract unless he has first exhausted his administrative remedies:

> When an administrative remedy is prescribed by statute, a trial court lacks jurisdiction to entertain a case until the aggrieved employee has pursued his or her administrative remedies. Therefore, an employee who is covered by a collective bargaining agreement, which provides the exclusive remedies for breaches of that agreement, must first exhaust his or her remedies under the bargaining agreement before filing a lawsuit.

*Shumake v. Philadelphia Bd. of Educ.*, 454 Pa.Super. 556, 686 A.2d 22, 24 (1996) (citations omitted) (finding that trial court properly dismissed employee's claim for

---

**3.** The Third Circuit Court of Appeals determined in *Anjelino v. The New York Times Co.*, 200 F.3d 73, 87 (3d Cir.1999), that a motion to dismiss for failure to exhaust administrative remedies should be decided pursuant to Fed.R.Civ.P. 12(b)(6), rather than Fed. R.Civ.P. 12(b)(1).

breach of collective bargaining agreement because she did not exhaust the mandatory arbitration procedures of the Public Employee Relations Act, 43 Pa. Stat. Ann. § 1101.903). The Second Amended Complaint fails to allege whether DiBartolo attempted to resolve his claims for breach of the CBA through arbitration pursuant to the Pennsylvania Public Employee Relations Act. The Second Amended Complaint also fails to allege any facts which would support DiBartolo's argument that exhaustion of his administrative remedies pursuant to the Public Employee Relations Act would be futile.[4] Accordingly, DiBartolo's claim for breach of contract in Count V of the Second Amended Complaint will be dismissed.

### B. *Claims Pursuant to the Pennsylvania Constitution*

Defendants again argue that Count VII of the Second Amended Complaint, which alleges that their conduct violated Article I, Sections 1 (due process), 7 (freedom of speech), 11 (access to federal courts), and 26 (prohibiting governmental discrimination) of the Pennsylvania Constitution, should be dismissed against the City of Philadelphia and the individual Defendants in their official capacities because Pennsylvania does not recognize a private right of action for damages against government officials for the alleged violations. (Def.'s Mem. of Law at 6–7.) The Court considered this argument in its February 15, 2000 Memorandum Opinion and granted the previous Motions to Dismiss Count VII against the City of Philadelphia and the individual Defendants in their official capacities. *DiBartolo v. City of Philadel-*

*phia,* 2000 WL 217746, at *8 (E.D.Pa., Feb. 15, 2000).

### C. *CLAIMS AGAINST McNALLY*

In its February 15, 2000 Order, the Court dismissed the Amended Complaint with respect to McNally, giving DiBartolo thirty (30) days to amend. DiBartolo has now added several paragraphs to the Second Amended Complaint which allege that McNally took actions against him, such as demoting him without notification, falsely telling him that the position he sought in the TB Unit did not exist, and offering him a position which would place his career advancement in jeopardy. (2nd Am. Compl. at ¶¶ 73, 79, 82, and 84–92.)[5]

Defendants have moved to dismiss all of the claims made against McNally in the Second Amended Complaint. (Def.'s Mem. of Law at 8.) Count I asserts a claim against McNally pursuant to 42 U.S.C. § 1983 for violating DiBartolo's First Amendment rights by retaliating against him for speaking out against inappropriate and unlawful hiring practices. (2nd Am. Compl. at ¶¶ 109–126.) Count II asserts a claim against McNally pursuant to 42 U.S.C. § 1985 for knowingly and intentionally engaging in a deliberate policy of discrimination against DiBartolo on account of his race and sexual preference and to intimidate him for opposing the City of Philadelphia's hiring practices. (2nd Am. Compl. at ¶¶ 128–130.) Count III asserts a claim against McNally pursuant to 42 U.S.C. § 1983 for violation of the equal protection clause of the Fourteenth Amendment by treating DiBartolo differently from homosexuals and African-

---

**4.** The Supreme Court has recognized that exhaustion of administrative remedies would be futile where the timeframe for administrative action is "unreasonable or indefinite," the administrative body is unable to grant effective relief, or where it "is shown to be biased or has otherwise predetermined the issue be-

fore it." *McCarthy v. Madigan,* 503 U.S. 140, 148, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

**5.** McNally has been named in Counts I—III, VII, VIII and X of the Second Amended Complaint.

Americans who held similarly situated positions. (2nd Am. Compl. at ¶¶ 132–135.) Count VII alleges a claim against McNally for violation of Article I of the Pennsylvania Constitution. Count VIII asserts a claim against McNally for punitive damages and attorney's fees pursuant to 42 U.S.C. § 1988. (2nd Am. Compl. at ¶¶ 147–150.) Count X of the Second Amended Complaint alleges a claim against McNally for violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 955(a).

▓ Defendants argue that Counts I–III and VIII should be dismissed as against McNally because "Mr. McNally did not take any action, or fail to take any action, as a result of Plaintiff's race and/or sexual orientation. Nor did he take, or fail to take, any action to retaliate against Plaintiff." (Def.'s Mem. of Law at 8.) Drawing all inferences in DiBartolo's favor, the Second Amended Complaint alleges that McNally discriminated and retaliated against him by demoting him without notification, falsely telling him that the position he sought in the TB Unit did not exist, and offering him a position that would place his career advancement in jeopardy. (Second Am. Compl. at ¶¶ 73, 79, 82, and 84–92.). These allegations are sufficient to state claims for damages pursuant to 42 U.S.C. § 1983 and 1985 and the Motion to Dismiss Counts I–III of the Second Amended Complaint will be denied. DiBartolo v. City of Philadelphia, 2000 WL 217746, at *3–6 (E.D.Pa. Feb. 15, 2000). DiBartolo concedes that punitive damages are not available against the individual Defendants in their official capacities. Id., 2000 WL 217746, at *8. Accordingly, Count VIII of the Second Amended Complaint will be dismissed as against McNally in his official capacity.

▓ Defendants argue that Count VII of the Second Amended Complaint should be dismissed because Pennsylvania does not recognize a private right of action against government officials for violations of the Pennsylvania Constitution. (Def.'s Mem. of Law at 6.) DiBartolo admits that this claim may not be brought against McNally in his official capacity. However, he argues that he may pursue this claim against McNally in his individual capacity pursuant to 42 Pa. Cons.Stat. Ann. § 8550, which abolishes immunity for willful misconduct by local agency employees. King v. Breach, 115 Pa.Cmwlth. 355, 540 A.2d 976, 979 (1988). DiBartolo has sufficiently alleged that McNally's conduct was willful misconduct for the purposes of 42 Pa. Cons.Stat. Ann. § 8550. Accordingly, Defendants' Motion to Dismiss Count VII with respect to McNally will be denied to the extent that it alleges a claim against him in his individual capacity.

▓ Defendants argue that Count X of the Second Amended Complaint should be dismissed as to McNally because DiBartolo failed to exhaust his administrative remedies prior to filing suit. (Def.'s Mem. of Law at 6.) Although it would not have been necessary for DiBartolo's complaints filed with the EEOC/PHRA to name McNally if the factual statement in those complaints had provided adequate notice to him that his conduct had been challenged, Glus v. G.C. Murphy Co., 562 F.2d 880, 887–88 (3d Cir.1977), the factual statements made in those EEOC/PHRA complaints do not even mention McNally or any action allegedly taken by him. Accordingly, the Motion to Dismiss Count X as against McNally will be granted.

## IV. CONCLUSION

Plaintiff has not stated a claim against Defendants for breach of contract for which relief may be granted and, therefore, Count V of the Second Amended Complaint will be dismissed. Plaintiff also has not stated a claim against Defendants,

in their official capacities, for breach of the Pennsylvania Constitution for which relief may be granted and, therefore, Count VII of the Second Amended Complaint will be dismissed against the City of Philadelphia and the individual Defendants in their official capacities. Plaintiff has not stated a claim against McNally for violation of the PHRA and, therefore, Count X of the Second Amended Complaint will be dismissed against McNally. Plaintiff cannot state a claim against McNally in his official capacity pursuant to 42 U.S.C. § 1988 and, consequently, Count VIII will be dismissed as against McNally in his individual capacity. An order follows.

## *ORDER*

**AND NOW**, this 20th day of February, 2001, upon consideration of Defendant's Motion to Dismiss Portions of Plaintiff's Second Amended Complaint and Plaintiff's Opposition thereto, IT IS **ORDERED** that the Motion is **GRANTED** in part and **DENIED** in part as follows:

1. Count V of the Second Amended Complaint is **DISMISSED.**

2. Count VII of the Second Amended Complaint is **DISMISSED** as against Defendant City of Philadelphia and the Individual Defendants in their official capacities.

3. Count VIII of the Second Amended Complaint is **DISMISSED** against McNally in his official capacity and Count X of the Second Amended Complaint is entirely **DISMISSED** against McNally.