**EVONIK REXIM (NANNING) PHAR-MACEUTICAL CO. LTD. and Evonik Corporation, Plaintiffs,**

and

**Baoding Mantong Fine Chemistry Co., Ltd. and GEO Specialty Chemicals, Inc., Consolidated Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**GEO Specialty Chemicals, Inc., Defendant–Intervenor.**

Slip Op. 17–94

Consol. Court No. 15–00296

United States Court of International Trade.

August 1, 2017

Matthew T. McGrath, Barnes, Richardson & Colburn, LLP, of Washington, DC, argued for Plaintiffs Evonik Rexim (Nanning) Pharmaceutical Co. Ltd. and Evonik Corporation. With him on the brief was Stephen W. Brophy.

Ronald M. Wisla, Kutak Rock LLP, of Washington, DC, argued for Consolidated Plaintiff Baoding Mantong Fine Chemistry Co., Ltd. With him on the brief was Lizbeth R. Levinson.

David M. Schwartz, Thompson Hine LLP, of Washington, DC, argued for Consolidated Plaintiff and Defendant–Intervenor GEO Specialty Chemicals, Inc.

Robert M. Norway, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. With him on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Nanda Srikantaiah, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

## OPINION AND ORDER

Choe–Groves, Judge:

This case involves glycine, which is a free-flowing crystalline material, like salt or sugar. Glycine is produced at varying levels of purity and is used as a sweetener or taste enhancer, a buffering agent, reabsorbable amino acid, chemical intermediate, and a metal complexing agent. See Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review at 3, A–570–836, (Oct. 5, 2015), available at http://enforcement.trade.gov/frn/summary/prc/2015-26270-1.pdf (last visited July 25, 2017) ("I & D Memo"). Evonik Rexim (Nanning) Pharmaceutical Co. Ltd. and Evonik Corporation (collectively, "Evonik" or "Plaintiffs"), Baoding Mantong Fine Chemistry Co., Ltd. ("Baoding"), and GEO Specialty Chemicals, Inc. ("GEO") (collectively, "Consolidated Plaintiffs") bring this consolidated action for judicial review of decisions made by the U.S. Department of Commerce ("Commerce" or "Department") during the 2013–2014 administrative review of the antidumping duty order on glycine from the People's Republic of China ("China" or "PRC"). See Glycine

From the People's Republic of China, 80 Fed. Reg. 62,027 (Dep't Commerce Oct. 15, 2015) (final results of antidumping duty administrative review and partial rescission of antidumping duty administrative review; 2013–2014) ("Final Results"); I & D Memo; see also Glycine From the People's Republic of China, 60 Fed. Reg. 16,116 (Dep't Commerce Mar. 29, 1995) (antidumping duty order). Before the court are Rule 56.2 motions for judgment on the agency record filed by Evonik, Baoding, and GEO. See Evonik's Mot. J. Agency R. Under USCIT Rule 56.2, May 20, 2016, ECF No. 31; 56.2 Mot. J. Agency R., May 19, 2016, ECF No. 30; Mot. J. Agency R., May 20, 2016, ECF No. 32. For the reasons set forth below, the court sustains in part and remands in part Commerce's final determination.

## BACKGROUND

Commerce initiated an administrative review of the antidumping duty order on glycine from China on April 30, 2014, which covered subject merchandise that entered the United States between March 1, 2013 and February 28, 2014. See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 79 Fed. Reg. 24,398, 24,400 (Dep't Commerce Apr. 30, 2014). The Department issued preliminary results on April 8, 2015. See Glycine From the People's Republic of China, 80 Fed. Reg. 18,814, 18,814 (Dep't Commerce Apr. 8, 2015) (preliminary results of the antidumping duty administrative review and preliminary intent to rescind, in part; 2013–2014); Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review, A–570–836, (Mar. 31, 2015), available at http://enforcement.trade.gov/frn/summary/prc/2015-07952-1.pdf (last visited July 25, 2017) ("Preliminary Results Memo"). After Commerce issued preliminary results, Evonik, Baoding, and GEO each submitted timely administrative case briefs contesting various aspects of Commerce's determinations. See Case Brief of Evonik Rexim (Nanning) Pharmaceutical Co., Ltd., CD 80 at bar code 3275324–01, PD 216 at bar code 3275328–01 (May 8, 2015); Administrative Case Brief of Baoding Mantong Fine Chemistry Co., Ltd, CD 83 at bar code 3275402–01, PD 220 at bar code 3275404–01 (May 8, 2015) ("Baoding's Administrative Case Brief"); GEO Specialty Chemicals' Case Brief, CD 82 at bar code 3275332–01, PD 218 at bar code 3275335–01 (May 8, 2015).

GEO challenged the inclusion of certain information in Baoding's brief regarding the final determination in a prior administrative review of the antidumping duty order on glycine from China. See Corrections to Transcript of July 22, 2015 Public Hearing for 2013–2014 Administrative Review, PD 228 at bar code 3294933–01 (July 30, 2015). Commerce rejected Baoding's case brief because Commerce found that the brief contained untimely-filed new factual information. See Resp. to August 7, 2015, Letter from Baoding Mantong Fine Chemistry Co., Ltd. and Rejection of May 8, 2015, and August 7, 2015, Submissions by Baoding Mantong Fine Chemistry Co., Ltd., PD 236 at bar code 3300878–01 (Aug. 27, 2015) ("Commerce Aug. 27 Letter"). The Department offered Baoding the opportunity to resubmit a redacted version of the case brief by August 31, 2015. See id. Three days after that deadline expired, Baoding submitted the redacted version of its case brief and a letter that urged Commerce to exercise its discretion to accept the late-filed brief. See Submission of Baoding Mantong's Revised Administrative Case Brief and Revised Administrative Case Brief of Baoding Mantong Fine Chemistry Co., Ltd, CD 86 at bar code 3302223–01, PD 237 at bar code 3302224–01 (Sept. 3, 2015). The Department rejected Baoding's redacted brief as untimely and informed the interested parties that it

would not consider any arguments in Baoding's original brief. See Rejection of September 3, 2015, Submission by Baoding Mantong Fine Chemistry Co., Ltd., PD 240 at bar code 3307996–01 (Sept. 22, 2015). Commerce required GEO to submit a new version of its rebuttal brief redacting all references to issues raised in Baoding's original case brief. See id.

Commerce published the final results of the administrative review and accompanying memorandum on October 5, 2015. See Final Results, 80 Fed. Reg. at 62,027. With respect to Evonik, the Department determined that Evonik's sales during the review period were not bona fide, rescinded Evonik's review, and indicated that it would instruct U.S. Customs and Border Protection to liquidate Evonik's entries at the PRC-wide antidumping duty rate. See id.; I & D Memo at 20–24; Final Analysis of Bona Fide Nature of Evonik Rexim (Nanning) Pharmaceutical Co., Ltd.'s Sales, CD 88 at bar code 3404119–01, PD 249 at bar code 3404122–01 (Oct. 5, 2015) ("Commerce Final Bona Fide Sales Memo for Evonik"). With regard to Baoding, Commerce determined that Baoding's sale during the review period was bona fide and assigned a calculated dumping margin of 143.87 percent. See Final Results, 80 Fed. Reg. at 62,027; I & D Memo at 11–12; Final Analysis Memorandum and Business Proprietary Bona Fide Analysis for Baoding Mantong Fine Chemistry Co., Ltd., CD 89 at bar code 3404441–01, PD 250 at bar code 3404464–01 (Oct. 5, 2015) ("Commerce Final Bona Fide Sale Memo for Baoding"). To calculate Baoding's normal value, Commerce used import statistics for aqueous ammonia as the surrogate value for Baoding's liquid ammonia factor of production input and used financial statements from two Indonesian compa-

nies to determine the surrogate financial ratios. See Final Results, 80 Fed. Reg. at 62,027; I & D Memo at 11–12. The Department granted Baoding an offset to normal value for its sales of hydrochloric acid and ammonium chloride, which were generated as by-products of Baoding's glycine production process. See Final Results, 80 Fed. Reg. at 62,027; I & D Memo at 11–12.

The Parties commenced separate actions contesting several of Commerce's determinations in the Final Results, and the court consolidated these actions on January 21, 2016. See Order, Jan. 21, 2016, ECF No. 25 (granting Defendant's motion for consolidation). Plaintiffs and Consolidated Plaintiffs filed their respective Rule 56.2 motions and the court held oral argument on March 8, 2017. Evonik subsequently filed a motion to sever and stay its claim regarding the application of the PRC-wide antidumping duty rate. See Mot. Sever Claim and to Stay Severed Claim, May 25, 2017, ECF No. 68. The court granted the motion to sever this claim from Evonik's complaint and to stay the claim pending the final disposition of a similar claim in Baoding Mantong Fine Chemistry Co., Ltd. v. United States, Court No. 12–00362. See Order, June 1, 2017, ECF No. 70; Evonik Rexim (Nanning) Pharmaceutical Co. Ltd. v. United States, Court No. 17–00132.

## JURISDICTION AND STANDARD OF REVIEW

■ The court has jurisdiction over Commerce's final determination in an administrative review of an antidumping duty order. See 28 U.S.C. § 1581(c) (2012);[1] Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012).[2] The court will

---

1. Further citations to Title 28 of the U.S. Code are to the 2012 edition.

2. Further citations to the Tariff Act of 1930, as amended, are to the relevant provision of Title 19 of the U.S. Code, 2012 edition.

**1370**

uphold the Department's "determinations, findings, or conclusions" unless "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). When reviewing substantial evidence challenges to Commerce's decisions in an administrative review, the court assesses whether the agency action is "unreasonable" given the record as a whole. See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006).

## DISCUSSION

The court will address the Parties' arguments as follows: (I) Commerce's determinations regarding Evonik and (II) Commerce's determinations regarding Baoding.

### I. Commerce's Determinations Regarding Evonik

#### A. Evonik's Sales During the Period of Review

■ Evonik contests Commerce's determination that Evonik's sales during the period of review were not *bona fide*. See Evonik Pls.' Mem. Law Support Rule 56.2 Mot. J. Agency R. 7–14, May 20, 2016, ECF No. 31–2 ("Evonik Rule 56.2 Memo in Support"). Evonik argues that the Department relied improperly on facts such as high sales prices and the absence of factor of production information.[3] See id. Defendant asserts that Commerce conducted a proper analysis

and its determination was supported by substantial evidence. See Def.'s Opp. to Pls.', Consolidated Pl.'s, and Def.–Intervenor's Mots. J. Upon Agency R. 15–21, Dec. 9, 2016, ECF No. 51 ("Def. Mem. Opp. Rule 56.2 Mots.").

■ The amount of an antidumping duty is calculated from the difference between the "normal value"[4] and "export price"[5] of the subject imports. See 19 U.S.C. § 1675(a)(2)(A). Commerce may exclude sales that would otherwise be included in the calculation of the export price if Commerce determines that the sales are not *bona fide*. See Tianjin Tiancheng Pharma. Co. v. United States, 29 CIT 256, 259, 366 F.Supp.2d 1246, 1249 (2005). A sale is not *bona fide* when it is "unrepresentative or extremely distortive." Am. Silicon Techs. v. United States, 24 CIT 612, 616, 110 F.Supp.2d 992, 995 (2000). The Department employs a "totality of the circumstances" analysis when evaluating whether a sale is *bona fide* and considers, *inter alia*, factors such as: (1) the timing of the sale; (2) the price and quantity of the sale; (3) the expenses arising from the transaction; (4) whether the goods were resold at a profit; and (5) whether the transaction was at arm's-length. See Tianjin Tiancheng, 29 CIT at 260, 366 F.Supp.2d at 1250. The weight that Commerce gives to each factor depends on the specific circum-

---

3. Evonik also complains that Commerce improperly relied on Evonik's lack of [[ ]]. See Evonik's Rule 56.2 Memo in Support 11.

4. Normal value is the "the price at which the foreign like product is first sold ... for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price." 19 U.S.C. § 1677b(a)(1)(B). The price used to calculate normal value should be from "a time reasonably corresponding to the time of the sale used to determine the export price or con-

structed export price." 19 U.S.C. § 1677b(a)(1)(A); see also infra note 11 (discussing calculation of normal value in a nonstandard case involving a nonmarket economy).

5. Export price is "the price at which the subject merchandise is first sold ... before the date of importation by the producer or exporter of the subject merchandise outside of the United States to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States." 19 U.S.C. § 1677a(a).

stances of each case. See id. at 275, 366 F.Supp.2d at 1263.

Commerce concluded that Evonik's sales were not *bona fide* because of "(1) the atypical nature of Evonik's price; and (2) the atypical circumstances surrounding the sales." Commerce Final *Bona Fide* Sales Memo for Evonik at 8. Commerce considered Evonik's price per kilogram of glycine compared to Baoding's price and the highest U.S. spot market price.[6] See id. The Department determined that this pricing was " 'aberrational' and not based on any commercial circumstances." Id. at 7.[7] Commerce considered other "atypical circumstances" together with the aberrational price to support its conclusion. See id. at 8.[8] Commerce also found it unusual that Evonik could not provide certain factor of production information from its supplier. See id. Despite Evonik's argument that the Department relied merely on the high sales price in reaching its conclusion, see Evonik Rule 56.2 Memo in Support 7–14, it is clear to the court that the Department engaged in a "totality of the circumstances" analysis that considered an array of record evidence before the agency. See Commerce Final *Bona Fide* Sales Memo for Evonik at 7–8. The court finds, therefore, that Commerce's conclusion that Evonik's sales were not *bona fide* was supported by substantial evidence.

### B. Commerce's Assignment of the PRC–Wide Rate to Evonik

Evonik's Rule 56.2 motion challenged Commerce's assignment of the PRC-wide antidumping duty rate. See Evonik Rule 56.2 Memo in Support 14–16. Evonik filed a subsequent motion to sever and stay this claim. See Motion to Sever a Single Claim and to Stay the Severed Claim, May 25, 2017, ECF No. 68. The court granted Evonik's motion on June 1, 2017 and thus will not address Evonik's antidumping duty rate issue in this opinion. See Order, June 1, 2017, ECF No. 70 (granting Evonik's motion to sever and stay a single claim); Evonik Rexim (Nanning) Pharmaceutical Co. Ltd. v. United States, Court No. 17–00132.

## II. Commerce's Determinations Regarding Baoding

### A. Baoding's Sale During the Period of Review

■ GEO argues that Commerce erred in finding that Baoding's sale during the review period was *bona fide*. See Brief Supp. Pl. GEO Specialty Chemicals, Inc.'s Rule 56.2 Mot. J. Upon Agency R. 12–22, May 20, 2016, ECF No. 32 ("GEO Rule 56.2 Memo in Support"). GEO asserts that the sale was not *bona fide* because the quantity of the sale was lower than in prior years and the sale was not at arm's-length.[9] See id. Defendant contends that

---

6. Commerce found Evonik's price per kilogram of glycine was [[ ]] than Baoding's price and [[ ]] than the highest U.S. spot market price. See Commerce Final *Bona Fide* Sales Memo for Evonik at 7; Comments of GEO Specialty Chemicals, Inc. on the Resp. of Evonik Rexim (Nanning) Pharmaceutical Co., Ltd. to the Second Suppl. Questionnaire for Sections A and C at Attach. B, CD 57 at bar code 3242121–01, PD 144 at bar code 3242123–01 (Nov. 18, 2014).

7. Commerce further questioned "[[ ]]." Commerce Final *Bona Fide* Sales Memo for Evonik at 8.

8. For example, Commerce questioned the arm's-length nature of the sales because there was evidence that Evonik did not charge [[ ]]. See id.; *Bona Fide* Nature of Evonik Rexim (Nanning) Pharmaceutical Co., Ltd.'s Sales at 6, CD 72 at bar code 3268213–01, PD 206 at bar code 3268214–01 (Mar. 31, 2015) (Commerce's preliminary analysis of Evonik's *bona fide* sales).

9. GEO also contends that Baoding's price was [[ ]] the U.S. spot market price. See GEO Rule 56.2 Memo in Support 17–18.

Commerce's determination was based on an appropriate application of the "totality of the circumstances" analysis and was supported by substantial evidence. See Def. Mem. Opp. Rule 56.2 Mots. 9–15.

As discussed above, when Commerce conducts a *bona fide* sales analysis, it weighs several factors and makes a final determination based on the "totality of the circumstances." See Tianjin Tiancheng, 29 CIT at 260, 366 F.Supp.2d at 1250. Commerce provided the following explanation in support of its conclusion that Baoding's sale was *bona fide*:

> In considering all of the above factors, we conclude that Baoding Mantong's sale was *bona fide* based on the following findings: 1) the sale was completed prior to the completion of the POR; 2) the price was [different] than the U.S. spot-market price of glycine during early 2014; 3) the quantity was not atypical; 4) there were no unusual expenses arising from the POR sale; 5) there is no record evidence that the merchandise was not resold at a profit; and 6) the sale was made to an unaffiliated customer with terms set by negotiation and payment received in a timely manner, indicating that the sale was made at arm's length.

Antidumping Duty Administrative Review of Baoding Mantong Fine Chemistry Co., Ltd. at 5, CD 78 at bar code 3268465–01 (Mar. 31, 2015) (preliminary results analysis of Baoding's *bona fide* sale) ("Commerce Preliminary *Bona Fide* Sale Memo for Baoding").

Commerce found that although the quantity of the sale was smaller than sales in recent years, Baoding had sold a similar quantity of glycine during the 2003–2004 administrative review period. See Commerce Final *Bona Fide* Sale Memo for Baoding at 5; Second Suppl. Resp. of Baoding Mantong Fine Chemistry Co., Ltd. at 4, CD 58 at bar code 3243010–01, PD 147 at bar code 3243011–01 (Nov. 11, 2014) ("Baoding's Second Suppl. Resp."). The Department noted that Baoding's low volume sale "was not historically atypical." Commerce Final *Bona Fide* Sale Memo for Baoding at 5. Commerce determined that Baoding's pricing was commercially realistic because a comparable U.S. sales price could be detrimental to Baoding's interests with respect to the antidumping calculation.[10] See id. The Department found that record evidence established that Baoding's sale was completed during the period of review, there were no unusual expenses related to the transaction, and the product was sold by Baoding for a profit. See id. at 4–5; Section A Resp. of Baoding Mantong Fine Chemistry Co., Ltd. at Ex. A–7, CD 11 at bar code 3211346–04, PD 46 at bar code 3211355–03 (June 24, 2014); Sections C and D Resp. of Baoding Mantong Fine Chemistry Co., Ltd. at C10–C11 and App. C–1, CD 21–22 at bar code 3216145–01–03, PD 57–58 at bar code 3216156–01–03 (July 15, 2014) ("Baoding's Sections C and D Resp."); Baoding's Second Suppl. Resp. at 3 and Ex. S2–1. Commerce concluded that the transaction between Baoding and its purchaser appeared to be at arm's-length because Baoding and the purchaser were not affiliated through family members and did not have any other apparent personal, financial, or business ties. See Commerce Final *Bona Fide* Sale Memo for Baoding at 6; Commerce Preliminary *Bona Fide* Sale Memo for Baoding at 5; Suppl. Resp.

---

**10.** Baoding's price per kilogram was [[ ]] than the U.S. spot market price. See Commerce Final *Bona Fide* Sale Memo for Baoding at 5; Comments of GEO Specialty Chemicals, Inc. on Section A Questionnaire Resps. of Baoding Mantong Fine Chemistry Co., Ltd. and Evonik Rexim (Nanning) Pharmaceutical Co., Ltd. at 6 and Ex. B, CD 13 at bar code 3211346–01, PD 47 at bar code 3213644–01 (July 3, 2014).

of Baoding Mantong Fine Chemistry Co., Ltd. at 5, CD 39–40 at bar codes 3226883–01–02, PD 86–87 at bar codes 3326887–01–02 (Sept. 5, 2014) ("Baoding's First Suppl. Resp."); Third Suppl. Resp. of Baoding Mantong Fine Chemistry Co., Ltd. at 1, CD 62 at bar code 3258275–01, PD 157 at bar code 3258867–01 (Feb. 6, 2015) ("Baoding's Third Suppl. Resp."). Considering all factors in totality, the court finds that Commerce's deliberation of the record evidence was reasonable and the determination that Baoding's sale was *bona fide* was supported by substantial evidence.

## B. Commerce's Surrogate Value Selection

### i. Baoding's Liquid Ammonia Factor of Production

 Baoding argues that Commerce did not choose the best available information when it selected the surrogate value[11] for liquid ammonia to calculate Baoding's normal value. See Mem. Points and Authorities Support of Consolidated Pl.'s Rule 56.2 Mot. J. Agency R. 13–22, May 19, 2016, ECF No. 30–1 ("Baoding Rule 56.2 Memo in Support"). Baoding asserts that Commerce selected aqueous ammonia (listed as HTS Item 2814.2000) incorrectly for the liquid ammonia factor of production input. See Baoding Rule 56.2 Memo in Support 13–22. Baoding argues that Commerce should have selected anhydrous ammonia (listed as HTS Item 2814.1000) for the input instead of aqueous ammonia. See id. Baoding explains:

> In the final results, Commerce used a surrogate price derived from Indonesian import statistics for ammonia in aqueous solution (HTS Item 2814.2000), rather than the import statistics for anhydrous ammonia (HTS Item 2814.1000), to value the reported liquid ammonia inputs. The administrative record showed that the liquid ammonia used by Baoding Mantong had the chemical formula, molecular weight, purity level and HTS classification consistent with anhydrous ammonia. . . .

> That product, also known as ammonium hydroxide, has an entirely different chemical formula, molecular weight, and HTS classification as compared to liquid (anhydrous) ammonia and was, therefore, not specific to the liquid ammonia inputs used by Baoding Mantong to produce the subject merchandise.

Id. at 16, 20.

 Defendant argues that because Commerce rejected Baoding's untimely submission of the redacted version of its May 8, 2015 case brief, Baoding failed to exhaust its administrative remedies and is barred from challenging Commerce's surrogate value selection for liquid ammonia before the court.[12] See Def. Mem. Opp.

---

**11.** When subject merchandise is exported from a nonmarket economy and Commerce determines that available information does not permit the use of the standard normal value calculation, Commerce calculates normal value based on surrogate values for "the factors of production utilized in producing the merchandise" added to the "amount for general expenses and profit plus the cost of containers, coverings, and other expenses." 19 U.S.C. § 1677b(c)(1)(B). The Department will generally select, to the extent practicable, surrogate values that are publicly available, product-specific, representative of a broad-market average, and contemporaneous with the period of review. See Qingdao Sea–Line Trading Co. v. United States, 766 F.3d 1378, 1386 (Fed. Cir. 2014).

**12.** The court must, where appropriate, require parties to exhaust administrative remedies before bringing a claim to the CIT. See 28 U.S.C. § 2637(d). Requiring exhaustion ensures that the agency has an opportunity to correct any of its own mistakes before dealing with judicial review of its actions, serves to protect administrative agency authority, and promotes judicial efficiency. See Corus Staal BV v. United States, 502 F.3d 1370, 1379–80 (Fed. Cir. 2007) (citing McCarthy v. Madigan, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)).

Rule 56.2 Mots. 42–43. Baoding counters that exhaustion should not preclude the court from reaching the issue because Commerce erred in determining that the case brief contained untimely-submitted factual information and abused its discretion in rejecting the late-filed redacted case brief. See Baoding Rule 56.2 Memo in Support 22–29.

Commerce characterized the disputed sentence in Baoding's brief as new factual information "rebutting, clarifying, or correcting information on the record." Commerce Aug. 27 Letter. The one sentence at issue in Baoding's administrative case brief reads as follows: "Because Baoding Mantong's attempt to correct those errors was made only after the completion of the Department's verification, the Department determined not to accept Baoding Mantong's corrections to the record. Id." Baoding's Administrative Case Brief at 8.

 In order to assess whether Commerce properly characterized the sentence at issue, the court looks to the regulatory definition, which reads in relevant part:

Factual information. "Factual information" means:

(i) Evidence, including statements of fact, documents, and data submitted either in response to initial and supplemental questionnaires, or, to rebut, clarify, or correct such evidence submitted by any other interested party;

(ii) Evidence, including statements of fact, documents, and data submitted either in support of allegations, or, to rebut, clarify, or correct such evidence submitted by any other interested party.

19 C.F.R. § 351.102(b)(21) (2012).[13] The court finds that the sentence at issue is clearly a legal argument made by counsel in its brief, and is neither a statement of fact, document, nor data that would qualify as "evidence" within the meaning of the relevant regulatory definition for "factual information." Moreover, it is well-settled that arguments made by counsel are not evidence. See Gemtron Corp. v. Saint–Gobain Corp., 572 F.3d 1371, 1380 (Fed. Cir. 2009).

The court concludes that Commerce excluded Baoding's brief from the record improperly because the text at issue in Baoding's case brief is not new factual information under the applicable regulatory definition. The court finds that Commerce's rejection of Baoding's entire late-filed brief and all arguments regarding the surrogate value selection for liquid ammonia was erroneous. The Department should have considered the arguments in Baoding's brief and any ensuing arguments from other parties when calculating Baoding's normal value.

Commerce did not mention the issue of liquid ammonia, whether anhydrous or aqueous, in its Final Results and I & D Memo. In its brief before the court, Defendant merely asserted that "Commerce properly selected aqueous ammonia to use in its surrogate value calculation." Def. Mem. Opp. Rule 56.2 Mots. 36. Defendant also noted in its brief that the Department used anhydrous ammonia, the input proposed by Baoding here, in two prior administrative reviews stemming from the same antidumping order on glycine from China. See id. In an attempt to distinguish those results from the instant review, Defendant explained in its filing that "[t]he record in this review, unlike the records of the 2005–2006 review and the [2006–2007] review, [did] not contain documentation of

---

**13.** All further citations to Title 19 of the Code of Federal Regulations are to the 2012 edition.

the chemical reaction used by Baoding to produce glycine or any records that show the type of ammonia used in that reaction." Id.

 Although Commerce has discretion to determine which evidence is the "best available information," Commerce's findings must be reasonable and supported by substantial evidence on the record. See Qingdao Sea–Line Trading Co., 766 F.3d at 1386; Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States, 268 F.3d 1376, 1382 (Fed. Cir. 2001). The court examines the information used by the Department by inquiring "whether a reasonable mind could conclude that Commerce chose the best available information." Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1341 (Fed. Cir. 2011). In this case, Commerce improperly excluded Baoding's arguments from consideration.

While Commerce did not mention any reasons for selecting aqueous ammonia in its Final Results or I & D Memo, Defendant confirmed that Commerce relied on its selection in its normal value calculations. See Def. Mem. Opp. Rule 56.2 Mots. 34–36. The court notes that Commerce used anhydrous ammonia, not aqueous ammonia, in two prior reviews of the same antidumping order for glycine. See Glycine from the People's Republic of China, 73 Fed. Reg. 55,814 (Dep't Commerce Sept. 26, 2008) (final results of antidumping duty administrative review and final rescission, in part; 2006–2007); Glycine from the People's Republic of China, 72 Fed. Reg. 58,809 (Dep't Commerce Oct. 17, 2007) (final results of antidumping duty administrative review and final rescission, in part; 2005–2006). The court does not conclude that the factor of production input of aqueous ammonia was incorrect as a factual matter. Rather, in light of the deficiencies in the Department's explanation, the court directs the Department to accept Baod-ing's administrative case brief, review the relevant record (including the arguments put forth by Baoding and GEO), and reach a well-reasoned and adequately-explained finding as to the appropriate surrogate value for Baoding's liquid ammonia input.

### ii. Selection of Financial Ratios

 GEO challenges Commerce's selection of surrogate financial ratios by arguing that Commerce failed to explain adequately why the production process of the selected companies was comparable to that of Baoding's production of glycine. See GEO Rule 56.2 Memo in Support 28–32. Defendant argues that Commerce selected surrogate financial ratios of companies with similar production capability to Baoding, which represented the best available information. See Def. Mem. Opp. Rule 56.2 Mots. 31–35.

 Commerce has wide discretion when selecting the best available information to determine the most accurate dumping margin. See Qingdao Sea–Line Trading Co., 766 F.3d at 1386; Shakeproof Assembly Components, 268 F.3d at 1382. Commerce must choose financial ratios from "producers of identical or comparable merchandise in the surrogate country" when selecting surrogate financial statements. See 19 C.F.R. § 351.408(c)(4). The Department normally engages in a three-part analysis to determine whether the company in question produces "comparable merchandise," focusing on physical characteristics, end uses, and production processes. See Jiaxing Brother Fastener Co. v. United States, 34 CIT 1455, 1464–65, 751 F.Supp.2d 1345, 1354–55 (2010); Shanghai Foreign Trade Enterprises Co. v. United States, 28 CIT 480, 490, 318 F.Supp.2d 1339, 1348 (2004). Commerce also has a practice of selecting financial information from producers who have production experience similar to the respondent. See, e.g., Glycine from the People's

Republic of China, 72 Fed. Reg. 58,809 (Dep't Commerce Oct. 17, 2007) (final results of antidumping duty administrative review and final rescission, in part; 2005–2006) and Issues and Decision Memorandum for the Final Results of the 2005–2006 Antidumping Duty Administrative Review at 11–13, A–570–836, (Oct. 9, 2007), available at http://enforcement.trade.gov/frn/summary/prc/E7–20452–1.pdf (last visited July 25, 2017); Persulfates from the People's Republic of China, 70 Fed. Reg. 6,836 (Dep't Commerce Feb. 9, 2005) (final results of antidumping duty administrative review; 2002–2003) and Issues and Decision Memorandum for the 2002–2003 Antidumping Duty Administrative Review of Persulfates from the People's Republic of China at 4–6, A–570–847, (Feb. 9, 2005), available at http://enforcement.trade.gov/frn/summary/prc/E5–537–1.pdf (last visited July 25, 2017); Certain Frozen and Canned Warmwater Shrimp from the People's Republic of China, 69 Fed. Reg. 70,-997 (Dep't Commerce Dec. 8, 2004) (notice of final determination of sales at less than fair value) and Issues and Decision Memorandum for the Antidumping Duty Investigation of Certain Frozen and Canned Warmwater Shrimp from the People's Republic of China at 62, A–570–893, (Dec. 8, 2004), available at http://enforcement.trade.gov/frn/summary/prc/04–26976–1.pdf (last visited July 25, 2017).

GEO submitted the financial information of several Indonesian pharmaceutical companies for Commerce to determine surrogate financial ratios. See I & D Memo at 13. The Department explained that the companies suggested by GEO employed "much more advanced" processes than Baoding's production of glycine, and thus were not reflective of Baoding's business activities. See id. at 18–19; Preliminary Results Memo at 19. Instead, Commerce used financial ratios from two Indonesian producers, PT Budi Starch and Sweetener Tbk ("PT Budi") (a starch and sweetener

manufacturer) and PT Lautan Luas Tbk ("PT Lautan") (a chemical company), after finding that these companies had production processes comparable to Baoding's. See I & D Memo at 17–18; Preliminary Results Memo at 19. Commerce attempted to justify the selection of PT Budi and PT Lautan by explaining why the companies suggested by GEO were inadequate, see I & D Memo at 18, but failed to cite any record evidence or to provide adequate explanations to demonstrate why PT Budi's and PT Lautan's production experiences were comparable to Baoding's business activities. The Department's explanation contained mere conclusory statements regarding the similarity in production processes between Baoding, PT Budi, and PT Lautan. See I & D Memo at 19 ("[T]he companies have a comparable production process to producers of glycine ...."); Preliminary Results Memo at 19 ("After considering all surrogate financial statements, the Department determined to use the financial information of two Indonesian producers of merchandise with comparable production processes as glycine for the purposes of these preliminary results ...."); Surrogate Values for the Preliminary Results of Review at 7, PD 204 at bar code 3268210–01 (Mar. 31, 2015) ("[PT Budi and PT Lautan] engage in production processes comparable to the merchandise under review."). Although Commerce is given broad discretion to select the best available information when choosing surrogate values, the Department failed to adequately support its determination that PT Budi and PT Lautan engaged in production processes comparable to Baoding's glycine production. This issue is remanded for Commerce to address the court's concerns and support its selection of the companies used to determine surrogate financial ratios with substantial evidence on the record.

### C. Baoding's By–Product Offset

GEO argues that Commerce erred in granting Baoding a by-product offset when calculating its normal value. See GEO Rule 56.2 Memo in Support 22–28. According to GEO, Baoding did not provide sufficient evidence to support Commerce's decision to grant the by-product offset. See id. Defendant counters that Baoding submitted documentation such as receipts, payment vouchers, and inventory out-slips, which enabled Commerce to determine the amount of the offset for the review period. See Def. Mem. Opp. Rule 56.2 Mots. 24–28.

Commerce is tasked with calculating the normal value through use of surrogate values when subject merchandise is imported from a nonmarket economy country. See 19 U.S.C. § 1677b(c)(1). The Department must examine the "quantities of raw materials employed" by a company in reviewing factors of production to calculate normal value. See id. at § 1677b(c)(3)(B). Not all raw materials are incorporated into the finished product, however, and Commerce often offsets normal value by revenue derived from sales of by-products generated during the production of subject merchandise. See Arch Chems., Inc. v. United States, 33 CIT 954, 956, 2009 WL 2018014 (2009); Ass'n of Am. School Paper Suppliers v. United States, 32 CIT 1196, 1205, 2008 WL 5102258 (2008). Generally, the Department requires a party requesting a by-product offset to demonstrate that there was a quantity of by-product generated during the period of review and that the by-product had commercial value. See Am. Tubular Prod., LLC. v. United States, 38 CIT ——, ——, Slip Op. 14–116, at *17, 2014 WL 4977626 (Sept. 26, 2014); Arch Chems., 33 CIT at 956; I & D Memo at 11. The burden of substantiating any by-product offset falls to the respondent, who must present Commerce with sufficient information to support claims for the offset. See Arch Chems. 33 CIT at 956.

Commerce examined several factors when it considered whether to grant Baoding a by-product offset for its production of hydrochloric acid and ammonium chloride. First, Baoding introduced evidence on the record demonstrating the quantity of the by-products generated from the production of glycine. See Baoding's Sections C and D Resp. at D–15–D–16. Although Baoding did not maintain production records for the by-products, it showed that they were the result of the chemical process used to create glycine and were produced at a determinable rate during production. See id. Baoding was able to determine the amount of hydrochloric acid and ammonium chloride generated from the production of one metric ton of glycine. See id. By dividing the total amount of by-product sold during the period of review by the total production quantity of glycine, Baoding was able to calculate the requested offset. See id. Baoding corroborated this calculation by providing Commerce with receipts and inventory out-slips of the by-products sold during the review period. See Baoding's First Suppl. Resp. at App. S1–11. Second, Commerce considered whether Baoding sold the by-products to outside purchasers for revenue. See I & D Memo at 11–12. Commerce relied on evidence, including Baoding's inventory out-slips, payment vouchers, and receipts, when it concluded that Baoding's hydrochloric acid and ammonium chloride by-products had commercial value. See id.; Baoding's First Suppl. Resp. at App. S1–11; Baoding's Third Suppl. Resp. at 6. The court holds, therefore, that Commerce's determination to grant Baoding a by-product offset was supported by substantial evidence.

### CONCLUSION

For the foregoing reasons, the court concludes that: (1) Commerce's determi-

nation that Evonik's sales were not *bona fide* was supported by substantial evidence, (2) the Department's determination that Baoding's sale was *bona fide* was supported by substantial evidence, (3) Commerce's determination that Baoding improperly included new factual information in its administrative case brief was not supported by substantial evidence, (4) the Department's selection of surrogate financial ratios was not supported by substantial evidence, and (5) Commerce's determination to award Baoding a by-product offset was supported by substantial evidence. Therefore, in accordance with the foregoing, it is hereby

**ORDERED** that Commerce's determination that Evonik's sales were not *bona fide* is sustained; and it is further

**ORDERED** that Commerce's determination that Baoding's sale was *bona fide* is sustained; and it is further

**ORDERED** that Commerce's determination to award Baoding a by-product offset is sustained; and it is further

**ORDERED** that this matter is remanded for Commerce to (1) accept Baoding's administrative case brief as originally submitted to the Department on May 8, 2015, accept GEO's rebuttal brief as originally submitted to the Department on May 13, 2015, and address Baoding's and GEO's arguments regarding the surrogate value selection for liquid ammonia; and (2) further explain Commerce's selection of the companies used for Baoding's surrogate financial ratios; and it is further

**ORDERED** that Commerce shall file its remand determination with the court on or before September 1, 2017; and it is further

**ORDERED** that the Parties shall file comments on the remand determination on or before October 2, 2017; and it is further

**ORDERED** that the Parties shall file any replies to the comments on or before October 16, 2017.